## MARSH *v.* UNION PACIFIC RY. Co.

*(Circuit Court, D. Colorado.   January 11, 1882.)*

**1. COMMON CARRIERS—LIENS FOR FREIGHT—TROVER.**

When goods are sent, not according to the contract with the owner, but by some other route, there is no lien for freight money; and if the goods are with held under a claim of lien, an action of trover will lie for their value.

**2. TROVER—MEASURE OF DAMAGES—WITNESSES.**

Where household goods, more or less used, were transported by railroad to a distant place and there converted, *held*, that the owner was a competent witness to the point of their value, as such goods have no established market price, and the rule that the market value at the place of conversion is the true measure of damages is, therefore, inapplicable.

On Motion for a New Trial.

*J. W. Horner*, for plaintiff.

*Willard Teller*, for defendant.

HALLETT, D. J. The lien of a carrier for freight money on goods transported by him depends on the contract with the owner. Not that it is necessary that the lien should be mentioned in the contract, but there must be a contract for carriage on which it may rest. In the ordinary course of business, goods delivered for carriage are subject to the condition implied by law that the carrier may retain possession of them until his reasonable charges shall be paid. In delivering them to be carried, the owners assent to that condition, although nothing may be said on the subject, and thus it becomes a part of the contract—just as, in the absence of agreement as to price, the law will imply that it shall be reasonable. On this principle it is settled that a wrong-doer cannot confer on the carrier the right to assert a lien against the true owner. And when goods are sent, not according to the contract with the owner, but by some other

route, there is no lien for freight money;—*Fitch* v. *Newberry*, 1 Doug. (Mich.) 1; *Robinson* v. *Baker*, 5 Cush. 137; *Stevens* v. *Boston & Worcester R. R.* 8 Gray, 262;—because the owner cannot be divested of his property without his consent, and to allow a lien on the goods in a matter to which he has not assented, would divest him of his property to the extent of the lien.

To apply the rule to the present case, it is only necessary to say that, in the contract with the Pittsburgh company, plaintiff did not in any way consent to have his goods charged with a lien for carrying them to Denver. It was not an agreement to pay, and that his goods should be held until he should pay, but he did in fact pay the price of carrying the goods, and as to him the contract was fully executed before the goods left Zanesville. Plaintiff paid the price demanded of him, and all that was demanded for carrying the goods, and it would be absurd to say that he assented to a lien on his goods for the same thing—the money which he had already paid.

But it is said that the Pittsburgh company had no authority from defendant to fix the price of carrying the goods in the way that it was done on the schedule published by the Wabash and Missouri Pacific Companies. And so the court ruled at the trial, without referring to defendant's rule that for carrying household goods payment must be made in advance, under which it might be claimed with reason that the company first receiving the goods was defendant's agent to fix the rate and receive the money. This point was not stated to the jury, however, and they were advised that the Pittsburgh company was without authority from defendant to make the contract. The jury was also instructed to find whether the goods were received by defendant at Kansas City with knowledge that a through contract had been made by the Pittsburgh company, and the price paid for carrying them. Of that there was ample evidence in the rule of defendant requiring prepayment on household goods, and the fact that $85 was paid to defendant by the Wabash company on account of freight money. Some of defendant's witnesses say that the payment by the Wabash company is of no weight, as freight money is often advanced by shippers when a through contract has not been made, and it would be impossible to determine whether the money was paid on a through contract or as an instalment of freight money. This means that money is paid in both ways, and leaves the payment by the Wabash company to stand as affording some evidence of a through contract. Taken in connection with the rule requiring payment in advance on household goods, it was sufficient to warrant the finding that

defendant received the goods with knowledge that a through contract had been made for carrying them to their destination. And if defendant was advised of the terms of the contract before it performed the part assigned to it, there would be force in the suggestion that by such performance the contract was accepted. It is not necessary, however, to go so far, for the fact that a through contract and payment were made, and that defendant had knowledge of it, is enough to defeat the lien. Independently of that circumstance there may be room for debate whether one who has paid the price of carriage can be further charged in respect to the same matter; whether all companies who have a part in the contract and perform that part shall not be regarded as accepting the contract; whether any of the companies in the line of transportation after the first shall be taken to be the agent of the shipper to make a new contract for him, when, by acting for himself he has practically denied the authority of another to act for him. But these are points with which we are not now concerned. The jury have found, upon sufficient evidence, that defendant received the goods with knowledge of the fact that a through contract for carrying them had been made, and that plaintiff had paid for the service, and that, of itself, displaces the lien on which defendant relies.

This is enough to show that the action may be maintained, for trover lies for the value of goods illegally withheld under a claim of lien for freight money. *Adams* v. *Clark*, 9 Cush. 215.

Objection is made to the plaintiff as a witness to prove the value of the goods, on the ground that he had no knowledge of the market for such goods in Denver. Many cases are cited to the point that the market price in the place of conversion must control; a proposition which cannot be controverted. Whenever it appears that there is anything like an established price in the market, for which the articles in controversy can be replaced, that price will measure the damages for converting such articles. But for household goods, more or less worn, there is no established price, unless it be that at which second-hand goods of the same kind are sold. And although people who discontinue housekeeping may be compelled to accept that price, no one will contend that it is the full value of the goods. The fact that goods in use, if sold at all must be sold at a sacrifice, is too plain for argument, and therefore the price of such goods in market will not be adequate compensation to one who is deprived of his goods by a wrong-doer. Perhaps the best way to arrive at the value of such goods would be to show the price in market of new goods of the same

kind, and then show, as nearly as possible, the extent of depreciation from use. But this course was not open to plaintiff, for the goods were in defendant's possession, probably not in a condition to be examined, and plaintiff was not bound to inquire whether he would be allowed to send witnesses to inspect them. If it is suggested that a dealer, hearing a description of the articles, would be able to fix their value, the answer may be that few persons would be able to give a description which can be understood. The average man would find himself very much embarrassed in any effort to describe furniture and other articles of household use definitely, so as to enable one who never saw them to judge of their value. No one in Colorado knew anything of these goods, and among plaintiff's acquaintances in Zanesville he could not expect to find any one more competent than himself to testify as to their value. On the whole, it would seem that if plaintiff's testimony as to value cannot be accepted, he will be defeated of his right, and that will not be allowed. In the matter of values, as in other matters, the law will give relief, according to the injury, on the best testimony that can be obtained. *Stickney* v. *Allen*, 10 Gray, 352; *Starkey* v. *Kelley*, 50 N. Y. 676.

On the other hand, defendant, being in possession of the goods, was in a position to prove their value in a manner which would dispel all doubts. It attempted to do this, but the evidence is not very satisfactory. The goods were not in a condition to be examined with care, and defendant's witnesses did not give the attention necessary to correctly estimate their value. Evidence of the value in this market of new goods of the same kind, which would have enlightened the jury, was not offered by either party, and if the verdict is wrong the fault is not wholly with the jury. There is, however, some reason to believe that the amount returned is large, and the plaintiff will be required to remit $500, or submit to a new trial.

The evidence of value offered by defendant was probably entitled to greater weight than was allowed to it, although it cannot be said that it should control. If the plaintiff will remit from the damages the sum of $500, the verdict may stand, otherwise a new trial will be allowed.

Plaintiff remitted the $500, and judgment was entered for $1,500.