## L. R. & F. S. Ry. v. Daniels.

CARRIERS:  *Liability for excessive charges by connecting lines.*

A railroad company received 100 bales of cotton to be transported over its own and connecting lines, and gave a bill of lading which contained the following provisions: " It is understood that railroads connecting with this line recognize this bill of lading, and will settle freight bill accordingly ;" and, " Rates and delivery guaranteed only from Ft. S. to W. Cotton $1.07 per 100 lbs " In an action by the shipper against the company which gave the bill of lading, to recover an overcharge of freight collected at W., and the greater part of which was made by connecting carriers, *Held:* (1) That by the contract of carriage the defendant bound itself that nòt more than $1.07 per 100 lbs. should be collected of the plaintiff for transporting the cotton over its own and connecting lines, to its destination, and the *d*efendant is therefore liable for the whole amount of the overcharge. (2) That this liability is not affected by a stipulation in the same contract, that the defendant shall not be held liable for damages to the cotton after it has left its own line, as such stipulation has no relation to that part of the contract which fixes and guarantees the rate of carriage.

APPEAL from *Sebastian* Circuit Court.
R. B. RUTHERFORD, Judge.

*G. W. Shinn* for appellant.

Appellant is only liable for the overcharge on its own line, and to the point of delivery to its immediate connecting carrier. The bill of lading is the written contract, and by its terms each connecting carrier is responsible for any loss, detriment or damage occurring while in the custody of such carrier. *42 Ark., 465; 18 A. & E. R. Cases, 562, and note; 104 U. S., 157; 100 Mass., 26; 16 A. & E. R. Cases, 232; 3 Fed. Rep., 768; 12 id., 169; 30 id., 261.*

*Geo. H. Sanders* and *E. E. Bryant* for appellees.

Appellant, having "guaranteed" rates and delivery, is primarily liable. *1 Ark., 325, 333.* The word *guarantee* consti-

tutes an original undertaking. *107 Mass., 452; 20 John., 365; 11 Am. Dec., 288; 35 Conn., 343.*

An overcharge is not " loss, detriment or damage," contemplated by the bill of lading, and none of the cases cited by appellant's counsel are in point.

The appellant *contracted* that the rate should be $1.07 over the whole route, and *guaranteed* that its connecting carriers should carry for that rate. *Hutch. on Car., secs. 152, 151, 147, 148; 5 Daly, 394; 22 Wall., 594; 45 Iowa, 470; 21 Wis., 582; 22 Wall., 123.*

COCKRILL, C. J. This is an appeal by the railway company from a judgment recovered by J. B. Daniels & Co. for an overpayment of freight they had been compelled to make. The action was based upon two bills of lading issued by the appellant, and was tried on the following agreed statement of facts, viz.:

" On the 3d and 5th of October, 1885, J. B. Daniels & Co. delivered to the L. R. & Ft. S. Ry. Co. 100 bales of cotton to be shipped from Fort Smith, Ark., to Waterville, Me. The shipments were made under the two bills of lading exhibited. The cotton was delivered at its destination. The freight due on it, at the rate specified in the bill of lading, viz., $1.07 per 100 pounds, was $544.50. The amount of freight charged and which appellees paid at destination was $690.76, making an overcharge of $146.26 above the rate agreed on. The amount of overcharge on the L. R. & Ft. S. Railway was $14.95; the remaining overcharges of $131.31 being by and upon other connecting carriers by which said cotton was transported. The L. R. & Ft. S. Railway duly tendered and paid into court the $14.95, overcharge upon its line, April 28, 1886, before entering into the trial of this suit."

The judgment was for the full amount of the overcharge. The company contends that its liability is not greater than its

proportion of the excess over the stipulated price—that is, $14.95.

The solution of the question is to be determined by the terms of the contracts between the parties, and these are found in the bills of lading. The bills of lading are identical in form and contain two provisions pertinent to our inquiry, as follows, viz.:

"It is understood that railroads connecting with this line recognize this bill of lading, and will settle freight bill accordingly;" and, "Rates and delivery guaranteed only from Fort Smith to Waterville, Me. Cotton $1.07 per 100 lbs."

By the execution of a contract of carriage to a point beyond its line, the contracting company held itself out to the shipper as authorized to enter into a binding contract on behalf of the connecting carriers in the line of transportation. It has *stipulated* that connecting carriers will recognize the contracts of carriage made with the appellees, and will settle the freight bills according to their terms, and moreover follows this with an express guaranty that it will be done. The guaranty is unqualified. When one thus guarantees the acts of' others, his liability is commensurate with that of his principals, and when they are in default he becomes at once responsible for their dereliction. *Killian v. Ashley, 24 Ark., 511, 517; Brandt on Sur. & Guaranty, sec. 171.*

The provisions of the contracts stipulating that the appellant shall not be held liable for the loss of or damage to the cotton after it has left the line of its road, have no relation to that part of the contract which fixes and guarantees the rate of carriage, and the cases cited by the appellant's counsel, exonerating carriers from liability where the loss occurred after delivery to the connecting carrier, have no application. The appellant, by positive agreement, has bound itself to this: That not more than $1.07 per 100 pounds should be collected of the appellees for transporting the cotton over its own and

connecting lines to its destination. It must stand to its agreement and refund the excess collected.

Let the judgment be affirmed.