BARNEY CROSSAN *vs.* NEW YORK AND NEW ENGLAND RAILROAD COMPANY.

Suffolk.    March 11, 1889. — May 10, 1889.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, & HOLMES, JJ.

*Carrier by Railroad — Connecting Line — Contract — Lien for Freight — Conversion.*

A carrier by railroad made a written contract with a shipper for the transportation of horses over its own and a connecting line, of which it was not the agent, and in making up the total freight, which the shipper prepaid, allowed less for the carriage over the connecting line than by the tariff of the latter it should have done; and the connecting carrier, upon the arrival of the horses at their destination, refused to deliver them unless the additional freight was paid to it by the shipper. *Held*, in an action for conversion, that the connecting carrier acquired a lien on the horses for the additional freight, although when it accepted them for carriage it might have had notice from the way-bill that there had been an attempt to prepay the freight, and although the contract was shown to it before it refused to deliver the horses.

In such action it was *held* that the shipper was not entitled to go to the jury on allegations of unreasonable delay in the transportation, and of detention of the horses upon the cars, there being no evidence of such delay after their arrival, and the consequences of their subsequent detention being alleged only as a matter of aggravation of a wrongful refusal to deliver them; and that, the refusal to deliver the horses being rightful, negligence, if any, in the care of them while detained, could not be relied upon as a substantive cause of action.

HOLMES, J.   This is an action of trover for the conversion of nineteen horses.   The horses were shipped by the plaintiff on the Pennsylvania Railroad at Philadelphia for Boston, were delivered by that company to another at Jersey City, and were carried the last part of the way over the defendant's line.   The plaintiff prepaid the freight demanded, which was forty-four dollars.   But the Pennsylvania Railroad, in making up the total, allowed only thirty-two dollars for carriage east of Jersey City, instead of fifty dollars as it should have done by the defendant's tariff, so that there were eighteen dollars still to be paid if the defendant was to receive its usual rate.

At the time the defendant accepted the goods for carriage, it had notice of the contents of the way-bill, from which perhaps a jury might have inferred that a railroad agent versed in its abbreviations would have understood that there had been an attempt and an intention to prepay the freight.   It had not seen the written contract between the plaintiff and the Pennsylvania Railroad.   This contract was shown to the defendant before the refusal of the latter to deliver.   It contained the words " Frt 44.00 prepaid," and also a promise by the plaintiff to pay the Pennsylvania Railroad at the rate of twenty-two cents per hundred pounds, which would make the total forty-four dollars.   On the other hand, it showed that the horses were to be carried to Boston, and it did not purport to bind the Pennsylvania Railroad as a carrier for the whole distance, but contemplated delivery to other carriers not specified.   We are to take it also that the Pennsylvania Railroad was not the agent of the defendant, as the plaintiff's counsel disclaimed that ground.   When the horses arrived at Boston, the defendant refused to deliver them except upon payment of the amount unpaid, which is the alleged conversion.   The verdict was for the defendant.

The question is, whether the defendant had a lien for the freight due to it according to its schedule and unpaid.   The answer is not to be found in the letter of the document, but in general principles of law and considerations of policy.   The plaintiff contends that the Pennsylvania Railroad was a special agent, having no ostensible authority greater than that which he actually intended to give it, or at least that, if the defendant had notice that he had prepaid the freight demanded, it had

notice that the Pennsylvania Railroad had no authority to give it a lien for any further sum which the defendant might be entitled to demand. This view is not without sanction. *Marsh* v. *Union Pacific Railway*, 3 McCrary, 236.

But we think that there are weightier considerations in favor of the defendant. Suppose that it had had the facts definitely before it, it would have seen, to be sure, that the plaintiff did not contemplate paying any more money, but it would have seen also that he did contemplate and desire that the horses should be carried through to Boston by a continuous and speedy passage. The existence of the latter expectation is confirmed by the plaintiff's declaration, and by his testimony. He was not entitled to have both his expectations made good by the defendant. An unforeseen case had arisen, and the defendant was called on by the plaintiff's forwarding agent to act at once in some way. *Potts* v. *New York & New England Railroad*, 131 Mass. 455. The forwarding agent, whatever its obligations to the plaintiff, only consented to be liable personally to the defendant for thirty-two dollars, but required the defendant to forward the goods. The defendant was not bound to carry for less than its full charge, if it had any right to do so. But if the demand to forward was authorized ostensibly, or by implication, that is to say, if the carriage would give it a lien, it was liable to the plaintiff if it refused, except that it might demand prepayment. The plaintiff was not present, and it might take time and cost money to communicate with him; the horses were perishable, and their keep would probably have cost more than the unpaid freight if they had been delayed; although we do not now decide whether these last facts make a difference in the law. If the plaintiff had a contract with the Pennsylvania Railroad, that company could be made to indemnify the plaintiff in the place where the contract was made. Under such circumstances, there can be no doubt what course was most for the advantage of the owner, or what directions a prudent owner, if present, would give, and the analogies of the law would imply a corresponding authority in the defendant. *Knight* v. *Providence & Worcester Railroad*, 13 R. I. 572, 576. *Pierce* v. *Columbian Ins. Co.* 14 Allen, 320, 323.

If the effect of the plaintiff's instructions were doubtful, the

law would give the defendant the benefit of the interpretation adopted by it in good faith, (*Ireland* v. *Livingston*, L. R. 5 H. L. 395, 416,) and would consider the necessity of an immediate decision. *Hawks* v. *Locke*, 139 Mass. 205, 209. But the defendant does not need the aid of such considerations. Taking into account what we have said, and also that the defendant had a right to assume that the plaintiff knew that it was not bound by the Pennsylvania Railroad's contract, and therefore knew that a higher rate might be demanded beyond the lines of that road than had been paid, we are of opinion that the defendant was justified in giving preponderance to the requirement of continuous and speedy carriage, and in assuming that the authority of the Pennsylvania Railroad to offer the horses was not conditional upon the prepayment of freight by the plaintiff turning out to be full payment of all that the defendant could demand. See *Wolf* v. *Hough*, 22 Kansas, 659; *Wells* v. *Thomas*, 27 Mo. 17; *Vaughan* v. *Providence & Worcester Railroad*, 13 R. I. 578, 581; *Schneider* v. *Evans*, 25 Wis. 241, 250, 261, *et seq.*

It is to be observed that the principle that no man's property can be taken from him without his consent, express or implied, has not prevented the last of a line of carriers from maintaining its lien when the first carrier has forwarded the goods to a wrong place. *Briggs* v. *Boston & Lowell Railroad*, 6 Allen, 246, distinguishing *Robinson* v. *Baker*, 5 Cush. 137. *Whitney* v. *Beckford*, 105 Mass. 267. *Patten* v. *Union Pacific Railway*, 29 Fed. Rep. 590, disapproving *Fitch* v. *Newberry*, 1 Doug. (Mich.) 1. *Vaughan* v. *Providence & Worcester Railroad*, 13 R. I. 578. Yet in that case the last carrier might be said to have notice that the forwarding agent's authority was limited to sending the goods to the place directed by the shipper.

A subordinate argument was suggested, that the plaintiff was entitled to go to the jury on the allegations of unreasonable delay in transportation and of detention of the horses upon the defendant's cars. But there was no evidence of unreasonable delay by the defendant after the horses were received by it, and the consequences of the detention after arrival are only alleged as matter of aggravation of the alleged wrongful refusal to deliver them. As the refusal was rightful, negligence in the care of the horses while detained, if any there was, cannot be relied

on in this case as a substantive cause of action. It is plain, too, that the case was not tried on the footing of an action for negligence in rightful keeping, and the plaintiff acquiesced in that view of the case, and did not seek to amend. The questions of evidence are not argued by the plaintiff, and are sufficiently answered by the foregoing discussion.

*Judgment on the verdict.*

*W. C. Loring*, for the defendant.
*S. J. Thomas & C. P. Sampson*, for the plaintiff.