## FORDYCE *v.* JOHNSON.

## Opinion delivered July 1, 1892.

*Railways—Connecting lines—Freight charges.*

> Under a joint traffic arrangement between three connecting lines of railway, a car-load of flour was forwarded from Verona, Mo., *via* Nichols, Mo., and Jonesboro, Ark., to Clarendon, Ark. By mistake the intermediate carrier transported the flour beyond Jonesboro, where it should have been delivered to the last carrier, to Hopefield, Ark., and delivered it to a carrier not a party to the traffic arrangement, by which it was delivered to the last carrier above mentioned at Brinkley, Ark., a station situated between Jonesboro and Clarendon. In actions to recover the statutory penalty from the last carrier for refusing to deliver the flour upon tender of the charges shown by the bill of lading, and to recover possession of the flour, *Held:*
>
> (*a*). That where the bill of lading does not show all of the charges that are legally demandable by the carrier, the statutory penalty is not recoverable from the carrier upon its failure to deliver freight on tender of the charges shown by the bill of lading.
>
> (*b*). That, the last carrier not being responsible for the additional charges, the consignee is not entitled to recover the goods carried upon tendering the charges in the bill of lading, but will be required to pay the additional charges made by the connecting line that was not a party to the traffic arrangement.

Appeal from Monroe Circuit Court.

JAMES E. RIDDICK (on exchange of circuits), Judge.

Two suits were instituted by B. F. & G. F. Johnson against S. W. Fordyce and A. H. Swanson, receivers of the St. Louis, Arkansas & Texas Railway Company. (1) In one action they sought to recover the statutory penalty for failure to deliver a car-load of flour consigned to them, upon tender of the freight charges due; (2) in the other to recover possession of the flour. The pleadings in the two cases alleged the same facts, and substantially the same evidence was introduced in each.

Plaintiffs alleged that they had a car-load of flour shipped to them from Verona, Mo. ; that the freight charges thereon, as specified by the bill of lading, were $44.35, which was at the rate of twenty-two cents per hundred ; that the flour arrived in Clarendon on the 28th day of May, 1890, and on the next day they tendered the freight charges thereon and demanded the flour, and that defendants refused to deliver it after tender of payment therefor had been made.

The defendants answered and alleged that, on or about the 29th day of May, 1890, they received the shipment of flour mentioned in the plaintiffs' complaint, at the town of Brinkley, from the Little Rock & Memphis Railway Company, and forwarded the same to Clarendon, and that the charges therefor, according to established rates, were twenty-nine dollars and twenty-three cents ($29.23), and it appeared from the way-bill that the Little Rock & Memphis Railway Company had a charge of eight dollars and six cents ($8.06) upon the flour for hauling it from Hopefield to Brinkley ; that the Kansas City, Fort Scott & Memphis Railway Company had a charge upon it of twenty dollars and sixteen cents ($20.16) for hauling it from Nichols, Mo., to West Memphis, Ark., and that the St. Louis & San Francisco Railway Company had a charge upon it of sixteen dollars and ten cents ($16.10), all aggregating seventy-three dollars and fifty-five cents ($73.55). The defendants alleged that neither the St. Louis & San Francisco Railway Company nor any other person had the right, on the 14th day of May, 1890, or at any other time, to consign freight to the town of Clarendon, or any other point on their line of road, over the Little Rock & Memphis Railway line, at a rate of twenty-two cents per hundred pounds ; and that if any railway company signed and executed a bill of lading whereby it was agreed that the flour mentioned should be delivered to the plaintiffs

at Clarendon over the St. Louis & San Francisco Railway, the Kansas City, Fort Scott & Memphis Railway and the Little Rock & Memphis Railway and over the defendants' line, it was without authority from the defendants and in no way binding upon them. The defendants state that if the flour mentioned in the plaintiffs' complaint was shipped as alleged from Verona, Mo., to Clarendon, Ark., the proper route would have been *via* Nichols, Mo., and Jonesboro, Ark., to its destination ; that the flour was not received at Jonesboro by the defendants, and that it was not their fault that it was not received there.

The case was submitted to the court sitting as a jury.

B. F. Johnson testified that his firm, in May, 1890, ordered a car-load of flour from Verona, Mo. That the St. Louis & San Francisco Railway Company received it at that point and executed a bill of lading therefor at a twenty-two cent rate to Clarendon, Ark.; that when the flour reached Clarendon, he called at the station with the bill of lading for the flour and the defendants declined to protect it on account of the flour having been received at Brinkley, Ark., from the Little Rock & Memphis Railway Company ; that the charges of that road and other roads over which the flour had been transported aggregated forty-four dollars and thirty-two cents ($44.32), and that the defendants' charges for transporting the flour from Brinkley to Clarendon were twenty-nine dollars and twenty-three cents ($29.23). That he then tendered the amount of freight as shown by the bill of lading, and that the defendants' agent refused to accept anything less than seventy-three dollars and fifty-five cents ($73.55). That the flour was worth four or five hundred dollars.

The plaintiffs then read a bill of lading signed by the St. Louis & San Francisco Railway Company at

Verona, Mo., showing a twenty-two cent rate on 20160 pounds of flour to Clarendon, Ark.

The defendants introduced B. H. Wilson, who testified that he was agent for the defendants at Brinkley; that he received a car-load of flour in the course of business from the Little Rock & Memphis Railway Company at that place; that the charges of the St. Louis & San Francisco Railway, the Kansas City, Fort Scott & Gulf Railway and the Little Rock & Memphis Railway Company amounted to forty-four dollars and thirty-two cents ($44.32), and that there was no through tariff rate from Verona, Mo., to Clarendon, *via* the Little Rock & Memphis Railway Company, and that the published rates on car-loads of flour from Brinkley to Clarendon was twenty-nine dollars and twenty-three cents ($29.23). The way-bill accompanying the car-load of flour disclosed the same facts.

D. Miller testified that he was general traffic manager for the defendants. That no one in May, 1890, or at any other time, was authorized to sign a bill of lading at Verona, Mo., for the defendants for flour, either car-load lots or otherwise, at the rate of twenty-two cents per hundred *via* Hopefield, Ark., and over the Little Rock & Memphis Railroad. That the only basis upon which they would handle freight over that route would be subject to the published rates from Brinkley proper. That the St. Louis, Arkansas & Texas Railway Co. is a party to a general tariff from Verona, Mo. to Clarendon, Ark., and other points, which provides that freight shall be routed *via* Nichols, Mo., the Kansas City, Fort Scott & Gulf Railway, to Jonesboro, Ark., and thence *via* the St. Louis, Arkansas & Texas Railway to destination; that had the flour been forwarded *via* the route just indicated, "we would have been able to protect it under our joint tariff and agreement with

connecting lines. We were unable to protect the bill of lading without actual loss."

W. C. Stith, general freight agent of Kansas City, Fort Scott & Gulf Railway Company, testified that the rate per hundred on car-load flour from Nichols, Mo. to West Memphis, Ark. was sixteen cents. A. S. Russell, general freight agent of St. Louis & San Francisco Railway Company, testified that the rate per hundred on car-load flour from Verona to Nichols, Mo., over the St. Louis & San Francisco Railway was ten cents per hundred pounds.

The court found that the plaintiffs were the owners of the flour, that it had been shipped from Verona, Mo. over the St. Louis & San Francisco Railway and consigned to the plaintiffs at Clarendon, Ark., and that the defendants were parties with the 'Frisco and the Fort Scott & Gulf Railway Companies to a joint tariff from Verona to Clarendon, which provided that freight should be routed *via* Nichols, the Kansas City, Fort Scott & Gulf Railway to Jonesboro and thence *via* the defendants' line to destination at a rate of twenty-two cents per hundred, and that the flour was to be delivered at the rate of twenty-two cents per hundred, as shown by the bill-of lading ; that a tender of the freight was made for the flour, and that it was held for eight days. Judgment was rendered for plaintiffs for the recovery of the penalty in the one case and for possession of the flour in the other case. Defendants have appealed in both cases.

*J. C. Hawthorne* and *Sam H. West* for appellants.

1. Appellants were not parties to any tariff rate from Verona, Mo. to Clarendon, Ark.; but even if they were bound by a rate by way of Jonesboro, the car was mis-routed by no fault of appellants, and appellees are liable for the increased freight by reason of the mis-routing. 9 A. & E. R. Cases, 41. The St. L. & S. F. Ry.

was the agent of appellees.     88 Mass. 246.    And if several successive carriers carry the goods according to the directions given them by the forwarding agent, they act under the authority of the owner and cannot be considered as wrongdoers, although they are carried to a place to which he did not intend for them to be sent. And in such case the last carrier will be entitled to a lien on the goods, not only for the freight earned by him on his part of the route, but also for the freight which has been accumulating since the commencement of the carriage until he receives them.    149 Mass. 196; 22 Kas. 659 ; 27 Mo. 17.

2.    The appellees' remedy was against the St. L. & S. F. Ry. Co. on its guaranty of rates, or against the K. C., F. S. & G. R. Co., who mis-routed the freight.    49 Ark. 352.

3.    Accepting the freight was not a ratification of the bill of lading.    12 S. W. Rep. 530.

4.    An association among carriers for the transportation of freight and the division of the receipts in prescribed proportions does not constitute a partnership nor render the carriers jointly liable.    42 Ark. 265.    See also 19 S. W. Rep. 470.

5.    The Memphis road was not a party to the contract, and had a right to demand its lawful charges.

*H. A. Parker* for appellees.

1.    As to the replevin suit, the case of 49 Ark. 291 is conclusive.

2.    If several companies associate and form a continuous line and contract to ship goods for an agreed price, which the consignee pays in one sense, and which the companies divide, then as to third parties they are liable jointly and severally.    112 Ill. 180 ; 8 N. Y. 37 ; 19 Oh. St. 221 ; 17 N. Y. 306 ; 48 N. H. 339 ; 3 Duvall (Ky.), 4 ; Hutch. on Car. 159–160.

3. The act of 1885 is valid, and under it appellants are liable.

COCKRILL, C. J.    Two suits between the same parties growing out of one transaction come here together.    One is to recover a penalty for the railway's refusal to deliver goods to a consignee on tender of the charges shown to be due by the bill of lading under which the goods were shipped ; the other is an action of replevin brought by the consignee for the possession of the goods.    We leave the details of the facts to the reporter.

I.    *As to the penalty :*

The penalty denounced by statute against a railway for failure to deliver freight upon tender of the charges shown to be due by the bill of lading cannot be recovered against the railway where the bill of lading does not represent the amount of charges that are legally demandable by the carrier to whom the tender is made.    A plain illustration is where a through bill of lading is issued by a carrier who fixes a rate not authorized by the connecting carrier.    *Gulf, etc., Ry.* v. *Dwyer,* 19 S. W. Rep. 470.    In such a case the unauthorized contract does not deprive the last carrier of the right to hold the freight until his legal charges are paid.    *Crossan* v. *Ry.* 149 Mass. 196.

If the carrier who issues the bill of lading is authorized to stipulate that the last carrier will transport the freight over his line at a given rate, and the first or a succeeding carrier mis-routes the freight, so that when it reaches the last carrier it is burdened with charges for carriage over another line which the owner of the goods had not agreed to pay, that does not prevent the last carrier from maintaining possession of the goods to protect his lien for all lawful charges against them, for it is no fault of his that the additional charges have been

incurred.   *Crossan* v. *Ry.* 149 Mass. 199 ; *Vaughan* v. *Ry.* 13 R. I. 578.

If the first carrier guaranties a through rate at a given sum, when the only authority he has from the last carrier is that the latter will carry the goods over his line for a given proportion of the rate fixed by their traffic arrangements, the guaranty is not binding upon the last carrier because he has not authorized it.   Such an arrangement does not make the connecting lines partners, nor constitute one the agent of the other for any purpose, except to bind it to carry over its line at the rate agreed upon between them.   *Hot Springs Railroad* v. *Trippe*, 42 Ark, 465.

The carrier issuing the bill of lading cannot, therefore, throw upon the last carrier the burden of bearing an additional charge incurred through the negligence of a preceding carrier in forwarding or carrying the goods to a wrong place when the last carrier is not at fault.   *Price* v. *Ry.* 12 Col. 402 ; Hutchinson on Carriers, sec. 491*a*.

The undisputed facts place this suit for the statutory penalty in one of two attitudes, viz.: (1) If the goods were originally shipped to go under the bill of lading by way of Brinkley on the appellants' road, there was no authority in the shipping carrier to issue the bill of lading so as to bind the appellants or the L. R. & M. Ry. to carry at the rate specified in the bill of lading ; or (2) if the goods were shipped at an authorized rate to go over the appellants' line by way of Jonesboro, they were mis-routed by a preceding carrier for whose act the appellants were not responsible, and came to them bound by the charge of the L. R. & M. Ry. for the carriage over its line.   Under neither state of facts could the appellants, who were forced to assume or pay the charges existing against the goods when they came to their hands, be put in default by tendering the less amount

called for by the bill of lading; and the statute does not intend to punish a railway for refusing to do what it is not legally bound to do. The penalty was not incurred, and the judgment is wrong.

II. *As to the action of replevin:*

The company refused to surrender the goods unless the charges due the other companies, and $29 for carriage over its own line, were first paid. The latter amount is much in excess of what it would have been entitled to for the haul from Jonesboro to Clarendon under its arrangement with the company which issued the through bill of lading. The bill of lading does not expressly direct that the flour shall be delivered to the appellants at Jonesboro, but the finding for the plaintiffs fixes the fact that such was the contract between the parties to it. If, therefore, the car had been delivered to the appellants at Jonesboro, the contract would have bound it to carry the freight over its line at the contract price to Clarendon, its destination. Brinkley is on the same line, and is situated between Jonesboro and Clarendon. The freight was a car-load lot which went through to its destination without break of bulk. The only difference, so far as the evidence shows, that delivery at Brinkley instead of at Jonesboro made to the appellants was that it saved to the appellants about five-sixths of the haul it would have made in case of delivery at Jonesboro. The delivery at Brinkley redounded, therefore, to the appellants' advantage, and if they receive what they contracted to carry the goods the full route for, they will have no cause to complain. As the appellees wish to stand by their contract, they cannot complain at paying the appellants the price due them under the contract

But, as we have seen above, the appellants are entitled to the charges paid or assumed to the L. R. & M. Ry. for carriage over its line. That sum the appellees can recover of the company which guarantied the through

rate (*L. R. & F. S. Ry.* v. *Daniels*, 49 Ark. 352), or of the Kansas City Company, if that company was at fault in carrying the goods to Memphis and re-shipping over the L. R. & M. Ry.

The Kansas City Company was the agent of the appellees to forward the goods, and they must bear the result of their agent's negligence instead of casting it upon the appellants by forcing them to assume the charges paid to the L. R. & M. Ry., as they attempted to do.

The court should have allowed the appellants the charges due the latter company ($8.06) in addition to the amount called for by the bill of lading. The judgment in replevin will be modified here to that extent. The judgment for the penalty will be reversed, and the complaint dismissed.

It is so ordered.