ILLINOIS CENTRAL RAILROAD CO. v. BROOKHAVEN MACHINE CO.

1. JURISDICTION. *Justice of the peace. Replevin. Const. 1890, §§ 171, 274.*

The civil jurisdiction of justices of the peace up to $150 in amount, as previously existing, and up to $200 under § 171, constitution 1890, was conferred by constitutional grant, and not by legislation. Hence, as to this, there was no repugnancy between said § 171 and any existing *statutes*, and the increase of jurisdiction was not, by operation of § 274 of the constitution, deferred until April 1, 1892. In October, 1891, justice courts had jurisdiction of replevin suits for the recovery of property not exceeding $200 in value. *Rich* v. *Calhoun,* decided by this court February, 1892, 12 So. Rep., 707.

2. CARRIER. *Through contract. Excessive freight. Connecting line.*

Where a contract is made with an initial carrier for through shipment of goods at a fixed freight rate, but, in violation of this, it makes a greater charge and delivers the goods to a connecting carrier, with a way-bill showing the higher rate, the connecting carrier is not bound by the contract; but, if it carries the goods without advancing the charges of the first carrier, the contract amount being sufficient to pay its own charges, it should make delivery on receipt of such amount, after deducting its charges therefrom, accounting for any balance to the contracting carrier.

3. SAME. *Connecting carrier. Reasonable time to investigate. Damages.*

In such case, the delivering carrier, not being a party to the contract, is entitled to a reasonable time within which to make inquiry concerning the same, and, for refusing to accept the stipulated rate and make delivery, it is not liable for the damages sustained by the owner in being deprived of the use of the property during such time for investigation.

4. PUNITIVE DAMAGES. *When improper. Instruction.*

In an action of replevin against a railroad company for the wrongful detention of property, in the absence of evidence showing insult, oppression or the like, it is error to submit to the jury the right of plaintiff to recover punitive damages. Mere brusqueness of the agent of defendant, not amounting to insult, is not ground for the imposition of such damages.

FROM the circuit court of Lincoln county.

HON. W. P. CASSEDY, judge of the sixth district, presided,

the HON. J. B. CHRISMAN being disqualified by reason of relationship to a party in interest.

Replevin for certain machinery, brought by appellee against appellant in a justice court October 22, 1891. The affidavit averred that the property was of the value of $175. After the commencement of suit, plaintiff gave written notice of a claim of damages for the wrongful detention of the property amounting to $200. Plaintiff recovered judgment for the property and $50 damages. From this judgment the defendant appealed to the circuit court, where the defendant moved to dismiss the case, claiming that the justice court had no jurisdiction, the value of the property being more than $150. The motion was overruled. Thereupon plaintiff, by leave of court, filed a claim of damages amounting to $500, alleging wilful and oppressive wrong on the part of defendant in detaining the property. On the trial the court refused a peremptory instruction for defendant, and, at the instance of plaintiff, instructed the jury that the detention of the property by defendant was wrongful, and that the plaintiff was entitled to recover the same, together with such actual damages as it sustained by being deprived of its use. Further, the court instructed for the plaintiff that if the property was withheld wilfully, or under circumstances of insult or oppression, indicating a disregard of plaintiff's rights, then, in addition to actual damages, the jury might assess damages by way of punishment, not to exceed the amount demanded. Plaintiff recovered judgment for the property and $200 damages. Motion for new trial overruled. Defendant appeals. The opinion contains a further statement of the case.

*R. H. Thompson,* for appellant.

1. The question as to the jurisdiction of justices of the peace between November, 1890, and April 1, 1892, in matters of contract, was settled by this court in *Rich* v. *Calhoun,* 12 So. Rep., 707. That decision must be construed with refer-

ence to the case then before the court. Section 23, article 6, constitution 1869, and section 171, constitution 1890, are practically identical. It was settled by the logic of the decision in *Bell* v. *West Point*, 51 Miss., 262, that the jurisdiction of justices of the peace in matters of tort and replevin, was not conferred by the constitution, but by the statute. If this court gives any other effect to the slight change in the language of § 171, constitution 1890, than the one which is certainly wrought, then it must be held that an action of ejectment for land worth less than $200 can only be brought in the justice court, and other very serious consequences will flow from such a decision. The proposition asserted as the major premise of the argument is that the jurisdiction of justices of the peace in actions of tort is statutory. There is nothing in the schedule of the present constitution variant from the premise. The minor premise is, that in October, 1891, there was no statute conferring jurisdiction on justices of the peace in replevin suit where the property exceeded in value $150.

2. The property, when delivered to the Chicago & Northwestern Railroad, was either that of Cullen or plaintiff. If it was the property of Cullen, then he delivered it to that road for transportation to Dixon, Ill., there to be delivered to defendant. In this way, he constituted the first carrier his agent to forward the property. Hutchinson on Carriers, § 108. Cullen being the owner, he, or his said agent, could impose any conditions on the shipment deemed proper, and the defendant was bound by those conditions. It would have been a violation of its duty to have delivered the property before the conditions were complied with. If the property remained in Cullen, the title was not in plaintiff when the suit was begun. If the property passed to plaintiff upon its delivery at Clinton, Iowa, then the first carrier became his agent, and defendant would not be liable for an error made by the agent as to freight charges. Therefore, in either view, it was error to refuse the peremptory instruction for defendant.

3. It distinctly appears from the testimony of Chrisman that the Brookhaven Machine Company is a partnership and not a corporation, and yet the names of the partners nowhere appear in the record. *Blackwell* v. *Reid,* 41 Miss., 102. To sustain the suit will be to repudiate the above decision, or else disregard the statute which dispenses with pleadings in cases begun in the justice court.

4. Plaintiff's instruction on the subject of exemplary damages should not have been given. In any view of the case, the exemplary damages were not warranted.

5. The motion for a new trial should have been sustained. The excessive verdict was the result of erroneous instructions given for the plaintiff.

*Mayes & Harris,* on same side.

*Cassedy & Cassedy,* for appellee.

1. The argument of opposite counsel is based upon an erroneous view of the decision in *Bell* v. *West Point,* 51 Miss., 262. The question involved here was decided by this court in *Rich* v. *Calhoun,* 12 So. Rep., 707. The language of the constitution of 1890 is, that the jurisdiction of justices of the peace shall extend to *causes* in which the principal amount in controversy shall not exceed the amount of $200. To say that this plain language confers jurisdiction only in causes *ex contractu,* is to do violence to every known rule of construction. The distinction between actions *ex contractu* and *ex delicto,* sought to be engrafted on the constitution by judicial construction, is purely fanciful.

2. The assumption that the Brookhaven Machine Company is a partnership is not sustained by the evidence. It was a partnership at the beginning, but Mr. Chrisman had become the owner of all the property, and was such before the suit commenced. It is immaterial that he continued business under the former name. But the proper mode of taking advantage of the defect complained of in a case where there is no pleadings would be by motion to dismiss.

3. The rule that where a carrier receives freight to be delivered to a connecting line for transportation to its destination, the first carrier is to be regarded only as the forwarder, does not abridge its power to make any contract with the shipper it may see proper. Here the contract was not for simple delivery to the connecting line, but for delivery at the point of destination. The first carrier selected the Illinois Central Railroad Company, and made its own contract with that company for delivery at Brookhaven. The latter company became the agent of the first carrier, and it had no right to detain the property when the stipulated freight charges were tendered. The fallacy of appellant's argument is in assuming that the first carrier was simply a forwarder. In support of the position that the contract between Cullen and the first carrier, and its delivery of the property to the defendant for transportation, made the latter the agent of the first carrier, we cite *Falvey* v. *Railroad Co.*, 76 Ga., 597; *Perkins* v. *Railroad Co.*, 74 Am. Dec., 507; *Najac* v. *Railroad Co.*, 83 *Ib.*, 686; *Williams* v. *Vanderbuilt*, 84 *Ib.*, 333; *Wheeler* v. *Railroad Co.*, 89 *Ib.*, 147; *Peet* v. *Railroad Co.*, 91 *Ib.*, 446; *Fitch* v. *Newberry*, 1 Douglass (Mich.), 1.

*Charles Chrisman*, on the same side.

1. Section 171, constitution 1890, plainly provides that the jurisdiction of justices of the peace shall extend to causes in which the principal amount in controversy shall not exceed the sum of $200. There is no authority for limiting this language to actions *ex contractu*. The constitution itself confers the jurisdiction of all our courts. To sustain the view of opposite counsel would be to overrule *Rich* v. *Calhoun*, 12 So. Rep., 707. *Bell* v. *West Point*, 51 Miss., 262, does not support the contention of counsel, but, on the contrary, sustains the jurisdiction in this case.

2. The evidence shows that Chrisman owned all the property of the Brookhaven Machine Company, and it was no longer a partnership. It is immaterial that he did business in

the name of the company, and so brought the suit. But objection as to this was not properly made by the request for an instruction.

3. The testimony abundantly shows that the conduct of defendant in withholding the property was oppressive and malicious. The matter was adjusted as soon as suit was brought. Why was not this done before? The agent of defendant had access to the telegraph, and ample time to investigate before the suit was instituted.

COOPER, J., delivered the opinion of the court.

A short time prior to the twenty-eighth day of September A.D. 1891, one Charles Chrisman, doing business by the name and style of the Brookhaven Machine Company, bought of one Cullen, at Clinton, in the state of Iowa, an engine and other machinery, conditional upon satisfactory freight rates being secured to Brookhaven, in this state. Cullen, having secured a rate with the Chicago & North-western Railway Company of seventy-five cents per hundred pounds, with five dollars for handling, communicated the facts to Chrisman, who thereupon agreed to purchase the engine, and requested shipment at once. On the twenty-eighth of September, 1891, Cullen shipped the property to Brookhaven, taking a written contract from the Chicago & North-western Railway for the delivery of the same at Brookhaven at the rate above named. In due time the property reached Brookhaven through the agency of the Illinois Central Railroad, an independent railway company, which connected with the Chicago & North-western at Dixon, Illinois. When the property was delivered to the Illinois Central, it was charged by the Chicago & North-western with freight in excess of the agreed rate, but it does not appear that the Illinois Central was informed that a through rate had been made by the Chicago & North-western, nor does it appear in evidence that there was any traffic contract between the two roads, or that either was

authorized to act as the agent of, or to bind, the other by through contracts.

When the property reached Brookhaven, Chrisman was notified of its arrival, and went to the depot to pay the freight, when he was presented with a bill for about $58, instead of $37.25, the freight fixed by the contract between Cullen and the Chicago & North-western Railway. This amount Chrisman refused to pay, but offered to pay the agreed price, which the agent declined to accept, stating that he could act only upon the way-bill under which his company had received the goods from the Chicago & North-western. Chrisman thereupon telegraphed to Cullen, who sent to him the contract made by him with the Chicago & North-western, on receipt of which, Chrisman again applied to the agent of the Illinois Central, and exhibited the contract, and demanded the goods, offering to pay the rate fixed by it. The agent again declined to deliver the goods, but took a copy of the contract, and promised to investigate the matter. At what date Chrisman exhibited the contract to the agent at Brookhaven does not very clearly appear, nor is it shown when the goods were received there. Mr. Chrisman, in his examination, stated at one time that the goods reached Brookhaven about the first of September, and again about the last of that month. From the testimony of the agent of the railroad at Brookhaven, it would be inferred that he first saw the contract between Cullen, the consignor, and the Chicago & North-western Railway Company about October 15. On the twenty-second of October, 1891, Chrisman brought replevin for the goods in the name of the Brookhaven Machine Company, and gave bond for the forthcoming of the property, which was thereupon delivered to him. After the institution of the suit, the Chicago & North-western Railway Company directed the rates as fixed by the contract to be received, and they were paid by Chrisman. The appellant notified the plaintiff that it set up no further claim to the property; but the suit was further prosecuted by the

plaintiff for the recovery of damages sustained by him by the retention of the goods by the defendant.

The affidavit for the writ fixes the value of the property sued for at $175; and upon this valuation the defendant bases its first defense to the action, which is that, at the time of the institution of this suit, justices of the peace had no jurisdiction in actions of replevin where the value of the property exceeded $150.

The constitution of 1869, § 23, art. 6, declared that "the jurisdiction of justices of the peace shall be limited to causes in which the principal of the amount in controversy shall not exceed the sum of one hundred and fifty dollars." In *Bell* v. *West Point*, 51 Miss., 262, it was held that jurisdiction was not vested in justices of the peace by the constitution, but that, within the limit fixed by the constitution, it was competent for the legislature to determine to what class of cases their jurisdiction should extend, and that it rested in legislative, as distinguished from constitutional, grant. In *Loomis* v. *Bank*, 4 How. (Miss.), 660, it had been held that the clause of the constitution of 1817 by which it was provided that the jurisdiction of justices of the peace, "in civil cases, shall be limited to causes in which the amount in controversy shall not exceed fifty dollars," was in itself a grant of jurisdiction. Peyton, C. J., dissented in the case of *Bell* v. *West Point*, and relied upon the decision in *Loomis* v. *Bank*. But neither Judge Simrall, who delivered the opinion of the court, nor Judge Tarbell, who wrote a concurring opinion, made the slightest reference to it. But in *Bell* v. *West Point* it was also held that the words, "causes in which the principal of the amount in controversy," did not mean actions upon contracts only, but had reference also to suits for chattels or torts when the value of the thing sued for, or the damages demanded, were within the limit of the sum fixed by the constitution to mark the extent of the jurisdiction of the court. The language of § 171, constitution 1890, is as follows: "The jurisdiction of justices of the peace

shall extend to causes in which the principal amount in controversy shall not exceed the sum of two hundred dollars." In the case of *Rich* v. *Calhoun*, 12 So. Rep., 707, we held that this was a grant of jurisdiction by the constitution, and that no statute was needed to carry it into effect.

Keeping in view the fact that in *Bell* v. *West Point* a construction had been given to the words used in the constitution of 1869, "principal of the amount in controversy," and that practically the same words are employed in the constitution of 1890, "the principal amount in controversy," it must be held that they were intended by the framers of the latter instrument to bear that construction which had been placed upon them by this court in considering the constitution of 1869. It follows as a necessary consequence of the decision in *Rich* v. *Calhoun*, in which we held that the jurisdiction of justices of the peace was vested by the constitution of 1890, that the justice of the peace by whom the writ was issued had jurisdiction of the cause.

It is assigned for error, and was one of the grounds of the motion for a new trial, that the evidence showed that the plaintiff, the Brookhaven Machine Company, was a partnership, and not an incorporated company, and that, though partners may sue in their firm name, describing themselves as partners, there cannot be a suit in the firm name only. We are unable to determine certainly by whom the suit is brought. The affidavit for the writ is made by Charles Chrisman, secretary and treasurer and agent for the Brookhaven Machine Company, but it avers that the affiant, and not that the company, is entitled to the property. The writ, on the other hand, recites that affidavit had been made by Chrisman that the Brookhaven Machine Company was entitled to the property, and the bond is in the name of the company, and so is the judgment. As the judgment must be reversed on another ground, it is only necessary now to say that the proceedings should be put in proper shape before another trial is had.

The principal point in the case is whether the appellant, the last carrier by which the goods were transported, was liable to suit by reason of its refusal to deliver the goods until the freight charged against them by the first carrier had been paid. The appellant contends that the Chicago & North-western Railway was the agent of the owner of the goods, either the consignor or the consignee; that the error arose because of the negligence or wrong of that agent in delivering to it the goods charged with an excessive rate of freight, and that the owner of the goods must look for indemnity to his agent, the first carrier. On the other hand, it is contended for the appellee that the contract with the Chicago & North-western Railroad was one for through carriage of the goods from Clinton, Iowa, to Brookhaven, Miss.; that neither the consignor nor the consignee had any interest in the means to be employed by the Chicago & North-western company in performing its contract, but that whatever connecting lines might be employed by that company would be its agents and not that of the owner of the goods; and so the appellee contends that the Chicago & North-western was not its agent, but was the principal of the defendant company, and, as such, liable to indemnify it as against any recovery secured by the plaintiff for the unlawful detention of the goods.

Whether the contract made between Cullen and the Chicago & North-western was a through contract is a question upon which the courts are divided; but, under the circumstances of this case, we think the inquiry immaterial, for, whether it was or was not a through contract, the right of the Chicago & North-western to freight was measured and limited by its terms.

There is nothing in the evidence to suggest that the Illinois Central knew when it received the goods that they were being carried by the Chicago & North-western under a special contract, and it was therefore entitled to receive the goods in the usual course of trade, and to have a lien upon

them for carriage over its own line, and also for any freight paid by it to the first carrier, although the amount should exceed the freight stipulated for in the contract between the owner and such first carrier. The owner of the goods, by intrusting them to the first carrier, invited other connecting lines to join in their transportation to their point of destination, and though, as between himself and the contracting carrier, the relation of principal and agent did not exist, there was nothing communicated to the second carrier from which the absence of that usual relation ought to have been assumed by it. It has, indeed, been held by some of the courts that knowledge by the second carrier of a special contract between the shipper and the first carrier for less than the usual rates will not preclude the second from accepting the goods and charging them with full rates over its own line. *Crossan* v. *Railroad Co.*, 149 Mass., 196. And it is universally held that, in the absence of notice of a special contract, the connecting carrier may receive the goods and charge them with the usual freight over its own line, and very generally held that it has a lien for freight paid by it to the preceding carrier, though the rate paid be in excess of that provided for by the special contract between such carrier and the shipper. Hutch. on Car., § 478a; *Briggs* v. *Railroad*, 6 Allen, 246; *Wells* v. *Thomas*, 27 Mo., 17; *Bird* v. *Railroad*, 72 Ga., 655; *Knight* v. *Railroad Co.*, 13 R. I., 572; *Vaughan* v. *Railroad Co., Id.*, 578; *Wolf* v. *Hough*, 22 Kan., 659; *Schneider* v. *Evans*, 25 Wis., 241; *Loewenberg* v. *Railroad Co.* (Ark.), 19 S. W. Rep., 1051.

If the Illinois Central company had paid to the Chicago & North-western road the excessive rates charged by that company for the transportation of the goods, it might have retained possession of the goods until payment thereof, together with its own charges for carriage. But this was not done. The defendant company received the goods under a way-bill by which certain charges were made against the goods, and these charges it sought to collect, not as due to itself,

by reason of its having paid them to the Chicago & North-western, but as due to that company, and to be collected by itself as the agent of that company.   This is a totally different question from that presented in that class of cases in which payments have been actually made by the last carrier of the charges of prior ones.   In those cases, the last carrier, having paid out money to one apparently authorized by the owner of the goods to collect it, and having, by law, a lien upon them for its repayment, will not be required to release the goods and look to the carrier to whom the money was paid, for re-imbursement.   It may retain the goods until the money is paid, because the money is, as between itself and the owner of the goods, considered by the law as due.   But, in the present case, the Illinois Central Railroad Company had not paid the money claimed by the Chicago & North-western.   The claim was not that the owner owed that sum to the Illinois Central, but that he owed it to the Chicago & North-western, and the lien asserted was to secure the payment of the money due to that company.   In this, the defendant company was manifestly acting as the agent of the Chicago & North-western, and the right to retain the goods rested upon the validity of the charge upon them, and was limited thereby.   The agent of the Illinois Central was entitled to retain the goods for a reasonable time, within which to learn the facts, but, when it was made to appear, by the production of the contract between the shipper and the Chicago & North-western Railroad Company, that that company had made an overcharge, it devolved upon the Illinois Central to surrender the goods, upon payment of the agreed freight (the same being more than sufficient to pay the charges due to the Illinois Central), and, having received what was due to itself, it would have fully complied with its duty to the Chicago & North-western by accounting for the surplus. *Railroad Co.* v. *Marsh,* 57 Ind., 505.

The case was tried in the court below upon the theory that the defendant company was liable for all actual damages sus-

tained by the plaintiff, by being deprived of the use of the property during the whole of the time it was detained.　This, as we have shown, was error, for the defendant was entitled to a reasonable time in which to investigate the matter, and it does not appear that any definite information was received by it until Mr. Chrisman exhibited to the agent the contract he had received from Cullen.

It was also 'erroneous to submit to the jury the right of the plaintiff to recover punitive damages.　There is no evidence upon which a verdict for such damages could be sustained. Mr. Chrisman and the agent of the defendant company appear not to have been personally friendly, and it may be that the agent was not as polite as he would have been in his dealings with others, but mere brusqueness of the agent, not amounting to insult, is not ground, in law, for the infliction of punitive damages against his principal.

*The judgment is reversed.*