THOMAS H. WEBB *vs.* CHARLES C. HANLEY.

Norfolk.    March 15, 1910. — June 27, 1910.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Contract,* Performance and breach.    *Practice, Civil,* Exceptions, Mistrial.

If a yacht builder, who has contracted in writing to build for a customer a yacht intended for a racing boat, which will not be worth anything if not fitted for racing, after the customer has paid two instalments of the purchase money amounting to almost half of the price, receives from the customer a letter suggesting that the boat may be sold in Providence in Rhode Island instead of being used at Chicago in Illinois, and if the fitting of the boat to go to Providence to race ought to be different from the fitting the boat should have to go to Chicago to race, the receipt of this letter may justify the yacht builder in stopping work on the boat until he has learned from his customer whether the boat is to be sold in Providence or is to be used in Chicago, but it does not justify him in selling the boat to a third person and retaining the proceeds, and, if he does this, he is liable in damages for his breach of contract.

In an action of contract, where, on exceptions alleged by the defendant after a verdict for the plaintiff, the defendant contended that there was a mistrial in regard to the measure of damages, but no exception was taken to the rulings of the presiding judge on this point, and there was nothing to show what the ruling of the judge was as to the measure of damages, there was nothing to indicate error; and it was not necessary to consider whether a remark made by Bigelow, C. J., in *Bond* v. *Bond,* 7 Allen, 1, 6, as to the possibility of the court considering matters not strictly before them when the record shows clearly that the case resulted in a mistrial, is not to be taken to apply merely to a motion for a new trial.

CONTRACT for the alleged breach of a contract in writing which is printed below.    Writ dated December 10, 1907.

In the Superior Court the case was tried before *Sherman,* J.

The plaintiff lived in Peoria, Illinois, and the defendant lived in Quincy, Massachusetts, and had been a builder of both racing and cruising yachts for about twenty years.

The contract sued upon was as follows:

"Boston, Mass., October 19th, 1906.

"Mr. Thos. H. Webb,

Peoria, Ill.

"Dear Sir:

"I will build for you a cabin, jib and main sail boat 21 ft. water line, 33 ft. over all, 11 ft. beam, 900 ft. sail area, hollow spars and spinnaker boom. Water tight cock pit draining out board. Double planked cedar, white oak timbers and scantling, cock pit, companion way slide, hatches, folding table on centre board well, shelf in cabin and trimmings mahogany, deck and top cabin trunk, canvas covered, cleats, blocks and all metal used to be brass and tobin bronze, port lights in cabin trunk, 6-inch galvanized ventilator pipe forward with brass flange and plate, boat will be strong, fast and able, steer easy with a tiller. Most modern and approved construction, all material used, workmanship, the general style and finish of the boat shall be of the highest grade and the best.

"Price $1,150 aboard cars, finished complete, less whatever sum is due you on account of delay in the delivery of said boat as liquidated damages, as we have herein agreed, excepting sails and ballast, which are to be furnished by you. Terms $300.00 cash, $200.00 when boat is planked, $300.00 when finished, balance when received and satisfactory to you.

"Boat to be finished complete, in all respects, and put aboard cars strongly cradled and padded, between April 27th, 1907, and May 1st, 1907, and for each and every day failure so to do will allow you a deduction of $5.00 per day from price of boat as liquidated damages. Will keep boat full covered with insurance at your expense. Will give boat a thorough trial at my expense before shipping.

"Yours truly,

"C. C. Hanley."

"Accepted October 19th, 1906.

Thos. H. Webb."

On the day the contract was signed the plaintiff made a payment of $300 to be applied on the purchase price. On March 25 an additional payment of $200 was made in accordance with the terms of the contract. The plaintiff, relying on performance

by the defendant, had a suit of sails made for the yacht at a cost of $265 ; he also hired a sailor for the season of 1907 at $75 a month and bought various small fittings for the boat at a cost of $11.15. When it appeared that the boat would not be finished for that season, the plaintiff was obliged to discharge the sailor whom he had hired and pay him $75 for one month's wages.

After the contract was entered into, the plaintiff went back to his home and had no personal dealings with the defendant from that time forward, but various letters passed between the plaintiff and the defendant in reference to the boat. There was no question but that the plaintiff fully performed the terms and conditions of the contract up to April 29, 1907, when the following letter was written by the plaintiff and later was received by the defendant:

" Dear Charlie :

" Some Providence people want to buy my boat; please quote price to build without sails or ballast $1500.00. Will divide profits with you. Will she fit in Lipton 21 class Great Lakes? You have not said so, but suppose you got $200.00 draft sent you March 25th. . . .

　　　　　　　" Yours truly,

　　　　　　　　　　　　" Thos. H. Webb.

. . .

"April 29, 1907."

The defendant testified that upon the receipt of this letter he stopped work on the boat; that the boat was practically completed and that she could be finished in a week. There was evidence given in behalf of the plaintiff to the effect that it would take about two weeks to get the boat ready to be put overboard.

The plaintiff testified in his deposition that subsequent to May 1, 1907, he wrote to the defendant asking for information as to the condition of his yacht, but that he never received any reply to his letter and shortly afterwards put the matter in the hands of his attorneys for adjustment. The defendant testified on direct examination that he received no letter from the plaintiff after the letter of April 29, but on cross-examination he testified that he might have received a letter; that if Mr. Webb sent such a letter he probably got it.

On August 29, 1907, the following letter was sent to the defendant by the plaintiff's attorneys and was received by him :

"August 29th, 1907.

"Mr. Charles C. Hanley,

Hough's Neck,

. Quincy, Mass.

"Dear Sir:

"Thomas H. Webb *vs.* C. C. Hanley.

"Inasmuch as you have not fulfilled your part of the contract to build the boat for Mr. Webb, we hereby, in behalf of Mr. Webb, make demand on you for repayment of $851.15 with interest, being the amount paid you on the contract and liabilities assumed on the basis that the contract would be fulfilled. We advise you to confer with us as soon as possible in regard to this matter.

"Yours very truly,

"Blodgett, Jones & Burnham."

The boat subsequently was finished by the defendant and was sold by him.  The proceeds of the sale were kept by the defendant.

The defendant testified that he previously had built for the plaintiff two other boats.  These had been used for racing on the Great Lakes ; and the defendant further testified that he was familiar with the racing restrictions there.  The plaintiff testified that this boat was to be used for racing and for cruising and that he intended to use it during the summer of 1907.  The contract in writing did not state, nor was there any evidence, that this boat was to be used on the Great Lakes or raced in any special class except as might be inferred from the above and the residence of the plaintiff.

At the trial the defendant on direct examination was asked the question:

" Are you familiar with the racing rules in the eastern waters ; take, for instance, Providence ; are you familiar with the racing rules there ? "  This was objected to.  The judge excluded the question, and the defendant excepted.  The defendant's counsel then offered to show " that the fitting of the boat would be different, entirely different, if it was to go in eastern waters, if it

was to go to Providence, than it would be if it were to go to Chicago, and that is the reason why he didn't go on with the work."

The judge excluded the evidence offered, and the defendant excepted.

After a colloquy with the defendant's counsel, the judge said, " The only question is whether you had a reasonable excuse which you would like to submit to the jury for breaking it [the contract], failing to comply with it, and I am ruling that you hadn't. So then it comes down to the question how much the plaintiff is entitled to recover, doesn't it ? "

The defendant testified that in answer to a question " Why did you stop? ", which was asked him by a representative of the plaintiff in August before the action was brought, he replied " The reason I stopped was because there would be a difference in the boat if the boat were sent to Providence, it would be fitted different because she is a racing boat and is not worth anything if she isn't fitted up for a racing boat, and if she isn't fast she isn't worth anything."

The charge of the judge contained the following:

" It is agreed, finally, whatever the pleadings are, that they did enter into this contract, and that the defendant was to build for the plaintiff this boat, the description of which is given, the kind of a board agreed upon, and that he agreed to build it and have it ready for use at such a date, between the twenty seventh of the month and the first of the next, say, or something like that.

" The defendant, anyway, didn't build his boat according to the contract, and never has built it and delivered it, and so he comes in here and attempts to avoid the responsibility. He says he was excused for not carrying out that written contract, and his excuse is this letter that has been read. . . .

" Between the twenty-seventh of April and the first of May the boat was to be delivered on cars. Now, on the twenty-ninth of April, 1907, Mr. Webb wrote: ' Dear Charlie (that is the defendant): Some Providence people want to buy my boat. Please quote price to build without sails or ballast, $1500. Will divide profits with you. Will she fit the Lipton twenty-one class Great Lakes? ' That is all that is said about it.

" Well, it did seem to me, as a matter of law, that that would

not be an excuse for avoiding the contract, what I have read to you. Mr. Foreman, you make a contract to build me a boat or house and I tell you I am talking with some Providence people, who want to buy it; ' Please quote price to build without sails or ballast, $1500. Will divide profits with you. Will she fit Lipton twenty-one class, Great Lakes?' If he had said, ' Hold on, don't go any further with the boat,' or said anything else, there might have been something for you, but in my opinion that was not a sufficient excuse for breaking his written contract, and I have so ruled."

This was all the material evidence offered by the defendant. At the close of the evidence the judge ruled that the evidence offered and the evidence introduced by the defendant were no defense to the action, and directed the jury to determine the damages for the breach of the contract. The jury rendered a verdict for the plaintiff in the sum of $893, and the defendant alleged exceptions.

*S. H. Tyng*, for the defendant.

*F. M. Murphy*, for the plaintiff.

LORING, J. The letter of April 29, taken in connection with the defendant's testimony which was admitted in evidence (that she was a racing boat and not worth anything if not fitted for racing), and also taken in connection with the testimony that was excluded (that the fitting of the boat if it was to go to Providence to race ought to be different from the fitting the boat ought to have if it was to go to Chicago to race), might have justified the defendant in stopping work on the boat until he learned from the plaintiff whether he sold her to the " Providence people " who wanted to buy her. See in this connection *Crossan* v. *New York & New England Railroad*, 149 Mass. 196. But that is not what the defendant did. In the words of the bill of exceptions " The boat was subsequently finished by the defendant and sold by him. The proceeds of the sale were kept by him." The letter is not a justification for the action which the defendant took.

The defendant has urged upon us that there was a mistrial in the measure of damages, and that there should be a new trial although no exception was taken to the instructions given by the presiding judge on this point. We have no means of know-

ing what the ruling of the judge on the measure of damages was. For that reason it is not necessary to consider whether the remark of Bigelow, C. J., in *Bond* v. *Bond,* 7 Allen, 1, 6, relied on by the defendant, is not to be taken to apply to a motion for a new trial, as was the case in *Ellis* v. *Ginsburg,* 163 Mass. 143, the other case relied on by him in this connection.

*Exceptions overruled.*