WALTER T. HORN *vs.* DORCHESTER MUTUAL FIRE INSURANCE COMPANY.

SAME *vs.* MIDDLESEX MUTUAL FIRE INSURANCE COMPANY.

SAME *vs.* TRADERS AND MECHANICS MUTUAL FIRE INSURANCE COMPANY.

Berkshire.    September 8, 1908. — October 19, 1908.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Agency. Insurance,* Fire. *Contract,* Validity. *Lord's Day.*

If one takes out a policy of fire insurance in response to the solicitation of an insurance agent this in no way makes the insurance agent the agent of the insured in afterwards procuring the signature of the insured to an agreement in writing purporting to cancel the policy, especially when the agent is acting wholly in the interest of the insurer and against the interest of the assured.

A contract made in violation of law cannot be enforced by setting it up as a defense to a cause of action otherwise well grounded. The parties to such a contract are left by the law where their own acts have placed them.

Signing and delivering on the Lord's day an agreement dated on a secular day to cancel an insurance policy and receiving in exchange a check for the return premium is a penal offense under St. 1904, c. 460, § 2, and the agreement of cancellation procured by such illegal transaction is no defense to an action on the policy to which it relates.

THREE ACTIONS OF CONTRACT, by the same plaintiff against three different insurance companies, on policies of insurance against fire covering a dwelling house, a horse barn and a cow barn of the plaintiff in the town of Adams. Writs dated August 26, 1907.

In the Superior Court the cases were tried together before *Hitchcock*, J. It appeared in evidence that one Crosier, an insurance agent having an office at Adams, wrote insurance for one Miller, an agent for the defendant companies, upon a commission basis; that the property mentioned above was insured through Miller and that a commission was paid by Miller to Crosier for obtaining such insurance, the insurance having been obtained from the plaintiff upon the solicitation of Crosier. A total loss of the dwelling house by fire occurred on April 3, 1907, and a total loss of the horse barn by fire occurred on April 6, 1907. For these losses, the defendants admitted that the plaintiff was entitled to recover; but they denied their liability for the loss of the cow barn, described in the policies, which also was destroyed totally by fire on April 16, 1907. On Sunday, April 14, 1907, after the first two losses, and two days before the third loss, Crosier, under instructions from Miller, called upon the plaintiff with the agreements of cancellation referred to in the opinion. He told the plaintiff that his policies had been cancelled, and asked the plaintiff to sign a receipt for the return premium which he then gave to him; whereupon the plaintiff signed the three cancellation agreements and received the sum of $18.48, that being the amount of the return premium on the policies. The plaintiff retained the policies, and after Crosier left the house read them over and found that he was entitled to ten days' notice before cancellation; and as soon thereafter as he was able he went to Adams and paid back the $18.48 to Crosier, who received it in the manner stated in the opinion.

At the close of the evidence the plaintiff asked the judge to make the following rulings:

1. That it was a question for the jury upon all the evidence in the case as to whether Crosier was acting for Miller, and thereby acting for the insurance companies, or whether he was acting for the plaintiff at first in obtaining the insurance and later in obtaining the cancellation agreement.

2. That from the evidence should the jury find that Crosier was acting for Miller, and thus was the sub-agent of the insurance companies, and that the cancellation agreement set up by the defendants was signed by the plaintiff on Sunday, and that the consideration therefore passed from Crosier to the plaintiff. on Sunday, then they should be instructed to find that the cancellation agreement was invalid and was no defense, and that the plaintiff was entitled to recover the full amount of insurance covered by the policies.

3. That from the whole evidence the plaintiff was entitled to recover the full amount of the insurance as set forth in the policies and as set forth in the plaintiff's declaration.

The judge refused to make any of these rulings, and instead ruled as follows:

" I think I shall have to rule that that release obtained on Sunday is a valid defense to a part of this action, and that there is not sufficient evidence of any fraud or misrepresentation with reference thereto which can avail this plaintiff, and if the plaintiff was ignorant of the provisions of the policies that was his own fault; he had the policies and could have ascertained what his rights were under them, and in such case as that it would require evidence of distinct acts of fraud or misrepresentation with the intention to deceive to overcome that or enable him to avail himself of the claim that he did this through ignorance of the conditions of the policies. I think I shall have to rule too, that under the statute Crosier was agent of the company for the purpose of receiving payment of premiums, but according to the evidence he is not agent of the company for any other purpose, and if I understand the defense that is offered in this case, the question whether he was agent of the plaintiff or the agent of the companies in obtaining the insurance is an immaterial question, so that I must confess I fail to see anything to submit to the jury. The court thinks the plaintiff in these cases is entitled to recover on the two items on the insurance on the house and on the horse barn. I do not think he is entitled to recover the insurance on the cow barn. I will so direct the jury."

The judge also further ruled and instructed the jury as follows:

" In the opinion of the court these cases have resolved them-

selves into questions of law and that there are no questions of fact to be submitted to you.   The ruling of the court is that the defendant in each of these cases is not liable on the policy for any loss that occurred after April 15, 1907.   And in addition, the defendants are liable in these actions for the losses that occurred prior to that date and each is liable for the sum of $433.33 together with interest thereon from June 24, 1907, and it is agreed between counsel that the amount stated together with interest amounts in each case to $454.56.   You are therefore directed to find a verdict for the plaintiff in each case for that amount."

The jury returned verdicts as directed; and the plaintiff alleged exceptions.

The case was submitted on briefs.

*F. R. Shaw & H. L. Harrington,* for the plaintiff.

*J. F. Noxon & M. L. Eisner,* for the defendants.

RUGG, J.   The first question is whether Crosier was the agent of the plaintiff in what he did as to the cancellation of the policies.   There was no general or previous agency, nor express authority from the plaintiff to him to cancel upon condition; hence *Faulkner* v. *Manchester Assurance Co.* 171 Mass. 349, is distinguishable.   If the agency exists, it must be implied from these facts: The plaintiff was solicited to let the insurance policies in issue be written by Crosier; the plaintiff assented, and the amount to be placed was decided upon between the plaintiff and the representative of a bank, which was loaning the former money upon the security of a mortgage on the property insured, and to which as mortgagee the policies were made payable.   Crosier did not write the insurance in any companies represented by himself, but obtained the policies from one Miller, who was the agent of the defendants, and from him received a commission; this occurred about January 15, 1906, when the policies were dated; later the plaintiff paid the mortgage, received the policies into his own possession, and retained them until after the fires about eight months later; the policies covered three buildings, one of which was burned on April 3, another on April 6, and the third on April 16, 1907; on Friday, April 12, 1907, after the first two fires, Miller wrote and dated the receipt of return premium and cancellation of each policy, and sent

them to Crosier, together with a check for the return premium and dividend, requesting him to get them signed by the plaintiff; Crosier on Sunday, April 14, went to the home of the plaintiff, and said to him, in substance, " the companies have cancelled the policies ; you will have to sign these notices ; I will pay you the money "; the plaintiff, in ignorance of the provision of the policies, requiring a ten days' notice of the cancellation of the policies, signed the receipts and cancellations, and received payment partly in check and partly in money for the return premiums and dividends; a few days later the plaintiff, learning of the ten day cancellation term of the insurance contract, returned the money to Crosier, who did not want to receive it, but the plaintiff left it, and Crosier sought and received from the defendant's agent, Miller, instructions as to its disposition, which he followed.

It is plain, from this narration, that Crosier in respect of the cancellations was acting solely as the agent of the defendants. There was no general agency respecting fire insurance matters from the plaintiff to him. No such inference can be drawn from authority conferred as to a single insurance of property. The solicitation from and in behalf of Crosier was merely to write the particular insurance. All that the plaintiff did was to accede to this request. His act carried no power as to the policies after they were procured. See *Green* v. *Star Ins. Co.* 190 Mass. 586, 596.

The conduct of Crosier touching the cancellations shows that he was not acting as the representative of the plaintiff but of the defendants. He was instigated, not by the plaintiff, but by the authorized agent of the defendants. He was by this agent furnished in advance with the necessary money and documents, which, if properly executed, would guard their interests and deprive the plaintiff of all protection. It was wholly against the interest of the plaintiff to have the policies cancelled, and it was the obvious duty of Crosier, if acting as his agent and in his interest, to insist upon compliance with the term of the policy as to the ten days' notice, and not voluntarily to waive it. But he stated to the plaintiff the fact that the companies had cancelled the policies, without adding that, unless he signed the paper presented, the companies would be obliged to give him

a written notice of the cancellations, and that any loss occurring within ten days after the notice would not be affected. He asked the plaintiff to sign the papers, and take the money. This is not the action of an agent of the insured, but of the other party to the contract. There is no circumstance upon which agency for the plaintiff can be predicated.

The procuring from the plaintiff of the receipts and agreements for cancellation of the policies having been the act of the defendants, it remains to inquire what is their effect as a defense. Although dated on a secular day, they were in fact signed and delivered by the plaintiff and the money paid to him by the agent of the defendants on the Lord's day. The doing of this business was a penal offense. St. 1904, c. 460, § 2. It has been often decided to be against the policy of the law for courts to lend their aid in the enforcement of contracts made in violation of this statute. This is equally true, whether the effort is to sue directly upon such a contract or to interpose it as a defense to an otherwise well grounded cause of action. Parties are left by the law precisely where their own acts, in making such a contract, leave them. Although performance on Sunday of a valid contract will not be treated as a nullity, it will not be given an independently affirmative effect beyond mere performance. *Gordon* v. *Levine*, 197 Mass. 263. *Clapp* v. *Hale*, 112 Mass. 368. Before the transaction on the Lord's day herein pleaded, there were valid contracts of insurance between the plaintiff and the defendants. What the defendants sought to set up as a defense was not performance of their contracts by the payment of previously established and liquidated liability, but new contracts by which the original contracts were annulled. It would be directly enforcing a contract made on the Lord's day to permit such a defense to prevail. The alleged cancellations of the policies were therefore void. *Moseley* v. *Hatch*, 108 Mass. 517. *Stevens* v. *Wood*, 127 Mass. 123.

*Exceptions sustained.*