EDWARD G. PARROT & another *vs.* MEXICAN CENTRAL RAILWAY COMPANY, Limited.

Suffolk.    March 8, 1910. — January 3, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, BRALEY, SHELDON, & RUGG, JJ.

*Agency,* Scope of authority, Proof of authority.  *Railroad,* Authority of officers.  *Practice, Civil,* Rulings at former trial, Refusal to order verdict, Exceptions.  *Evidence,* Proof of foreign law, Presumptions and burden of proof, Opinion.  *Contract,* Consideration, Performance and breach.

In an action of contract against a corporation operating a railroad in a foreign country, to recover for the breach of an alleged agreement to pay the reasonable expenses incurred by the plaintiff for the production of a book to be called a sportsman's guide book of the foreign country, the plaintiff introduced evidence of an oral agreement to the effect alleged made with the plaintiff in behalf of the defendant by the defendant's general passenger agent and its passenger traffic manager in the foreign country, and the defendant contended that neither of these persons had authority to make the oral agreement sued upon. In answers of the defendant's vice president to interrogatories filed by the plaintiff, there was evidence, that the defendant's general passenger agent was held out to the public as being such an agent by the use of his name on letter heads and otherwise, that his duties " were to exercise direct charge over the work of soliciting and securing passenger traffic for the road, and to make arrangements for that purpose," that the proposed guide book was intended to " make known and popularize the hunting and fishing regions " along the line of the railroad, that the defendant, before the alleged contract with the plaintiff, had planned to publish a similar guide book at its own expense and had advertised in various newspapers and magazines, the contracts for such advertising having been made by the defendant's general passenger agent and its passenger traffic manager, and that the duties of the passenger traffic manager " were generally to supervise the work of the passenger department." There was evidence tending to show that these two men represented the defendant generally at the head of its passenger department, that their duties could not be performed properly without the frequent expenditure of substantial sums of money, and that the advertising department was included in their charge. The vice president testified in his answers that these two agents contracted for advertising and had authority to give in return for it a certain amount of free or reduced transportation over the defendant's lines, but that neither of them had authority to make any contract for any purpose that involved the expenditure of money without

first having obtained special authority from an executive officer of the corporation. *Held,* that the jury might disbelieve the testimony of the vice president as to the limitation upon the authority of the two agents, or, if they believed the testimony, yet the requirement testified to that the agents should obtain permission from an executive officer before expending any money was in the nature of a secret limitation of the general authority that these agents were held out as possessing, and was not binding upon persons dealing with them in good faith in reliance upon their ostensible authority, so that there was evidence for the jury of the authority of the two agents to make the oral agreement relied upon by the plaintiff.

Where at the first trial of a case in the Superior Court the presiding judge discharges the jury and orders that the case be continued, and, after interrogatories have been filed by the plaintiff and have been answered in behalf of the defendant, the case is tried again before another judge, the presiding judge at such second trial is not bound by any intimations or expressions of opinion of the judge at the first trial.

Where in an action of contract the presiding judge refuses to rule that the defendant committed no breach of contract and refuses to order a verdict for the defendant, and does not ask the defendant's counsel to point out more particularly the propositions of law upon which he relies, it is open to the defendant upon exceptions to raise in this court a question of law actually involved in the refusal of the requests which was not referred to or thought of by the judge or the counsel at the trial.

In an action for the breach of an alleged contract, the plaintiff relied on an oral agreement to pay the plaintiff the amount of certain expenses to be incurred by him for the benefit of the defendant, which was made in the Republic of Mexico, a country which has not inherited the common law of England, and no evidence was introduced of what was the law in Mexico. The defendant contended that there was no presumption in regard to the law of such a foreign country, and therefore that the plaintiff could not prevail because this court could find no rule of law applicable to the case. *Held,* that there is a general presumption of fact that a contract, like that sued upon, to pay money for a valuable consideration creates a liability in all civilized countries, which is sufficient to entitle a plaintiff to recover upon proving his case as alleged, without any evidence as to the law of the place where the contract was made.

Cases cited by KNOWLTON, C. J., supporting the general rule in this Commonwealth, that a promise to pay one for doing that which he is under an existing duty to do is not binding for want of a consideration, and also cases illustrating the limitation of that rule established in this Commonwealth, that a promise to pay one for completing a contract which he has proposed to break is binding, with the remark that this limitation should not be extended beyond the cases to which it is applicable upon the recognized reasons that have been given for it.

In an action against a railroad corporation for the breach of an alleged agreement to pay the plaintiff the reasonable expenses incurred by him for the production of a guide book intended to make known the shooting and fishing regions along the line of the defendant's railroad, the plaintiff introduced evidence of an oral agreement made in behalf of the defendant by certain of its agents who could have been found to have authority to make it, promising to pay the plaintiff the amount of the expenses in question. There also was evidence that at the time this alleged oral agreement was made there was in existence an agreement in writing made by the plaintiff with a person purporting to act for the defendant, by which the plaintiff agreed to produce the guide book in question on certain

terms, but the defendant denied, both by the general denial in its answer and in the testimony of its vice president in response to interrogatories, that the person who made the agreement in writing had authority to make a contract of that character in behalf of the defendant. The defendant contended in this court that there was no consideration for the oral agreement relied upon by the plaintiff because when it was made the plaintiff already was bound to produce the guide book by the previous agreement in writing. *Held,* that it could not be assumed as matter of law that the contract in writing was made with authority from the defendant, and that, if the jury should find that the making of the contract in writing was not so authorized, they might find that an oral agreement was made later which adopted and included the provisions that previously had been reduced to writing, and that then for the first time a binding agreement was made between the plaintiff and the defendant's representatives acting with authority from the defendant, so that there would be no question of want of consideration.

In an action against a railroad corporation for the breach of an alleged agreement to pay the reasonable expenses incurred by the plaintiff in the production of a guide book intended to make known the shooting and fishing regions along the line of the defendant's railroad, the defendant contended that the plaintiff could not recover because he had not completed the performance of his contract. There was evidence that the defendant agreed to provide for the expenses incurred by the plaintiff in the prosecution of the work, that an agent of the defendant, with authority to do so, told the plaintiff to send the bill for his personal expenses to him, that the plaintiff incurred large expenses, and that the defendant, although requested, refused to pay the plaintiff any money and denied its liability to pay anything or to make any provision for the payment of the expenses. *Held,* that the acts of the defendant justified the plaintiff in refusing to go on with his contract and suing the defendant for damages.

In an action against a railroad corporation for the breach of an alleged agreement to pay the reasonable expenses incurred by the plaintiff in the production of a guide book intended to make known the shooting and fishing regions along the line of the defendant's road, the defendant should not be allowed to ask its agent, who made a contract with the plaintiff in regard to the production of the guide book, expecting the answer "No," the question, "Did you yourself have authority to spend any money for advertising purposes ?," because the question calls for a conclusion of the witness as to the effect of his relations with the defendant and not merely for facts which would show whether he had authority.

In an action against a railroad corporation for the breach of an alleged agreement to pay the reasonable expenses incurred by the plaintiff in the production of a guide book intended to make known the shooting and fishing regions along the line of the defendant's road, the plaintiff relied upon an oral agreement made in behalf of the defendant by two of its agents whose authority to make it was denied by the defendant. The plaintiff filed interrogatories addressed to the defendant, which were answered by its vice president. The presiding judge made rulings in regard to the answers to the interrogatories, which, when rightly interpreted, were in substance, that the answers were evidence of the facts tending to show the authority or the want of authority of the agents, but were not evidence so far as they stated the opinion or the conclusion of the vice president from these facts as to the extent of their powers or duties. *Held,* that the rulings of the judge, thus interpreted, were correct, and that the jury were not misled.

The ruling of a presiding judge excluding a portion of an answer to an interrogatory affords no ground for exception, if there was nothing material in the portion excluded that was not stated fully in the part of the answer which was admitted in evidence.

CONTRACT against the Mexican Central Railway Company, Limited,* a corporation organized under R. L. c. 111, §§ 281–285, to recover damages for the breach of an alleged agreement to pay the reasonable expenses incurred by the plaintiffs for the production of a book to be called " The Sportsmen's Guide Book of Mexico." Writ dated February 14, 1907.

In the Superior Court the case first came on to be tried before *Pierce*, J., who, after a part of the plaintiffs' evidence had been introduced, discharged the jury and ordered that the action be continued. The plaintiffs soon after filed interrogatories to the defendant, the answers to which, made by the defendant's vice president, are referred to and in part are quoted and described in the opinion.

Later the case was tried before *King*, J., the parties being represented by the same counsel as at the first trial. The jury returned a verdict for the plaintiffs in the sum of $1,718.27; and the defendant alleged exceptions, raising the questions which are stated in the opinion.

The case was argued at the bar in March, 1910, before *Knowlton*, C. J., *Morton*, *Loring*, *Braley*, & *Rugg*, JJ., and afterwards was submitted on briefs to all the justices.

*H. S. Davis*, for the defendant.

*A. H. Russell*, (*T. H. Russell, 2d*, with him,) for the plaintiffs.

KNOWLTON, C. J. In this case there was evidence from the two plaintiffs that an oral agreement for the payment of money was made with them by one McDonald, the defendant's general passenger agent in the city of Mexico, which, if it was binding upon the defendant as a contract, justified and required a finding for the plaintiffs. McDonald was not called as a witness, nor was Murdock, the defendant's passenger traffic manager, who was said by the plaintiffs to have been present when this agree-

---

* The defendant in this case was the same corporation that was the plaintiff in the case of *Mexican Central Railway Company* v. *Commonwealth*, 192 Mass. 129, although the word " Limited " is omitted from its name in the title of that case.

ment was made in Mexico, and to have participated in making it and to have acted under it.

The defense was a general denial that this agreement was made, and a denial that either McDonald or Murdock had authority to make it, and a contention that such an agreement could not be proved by oral testimony because the previous negotiations between the parties touching the subject had been reduced to the form of a contract in writing, and that, if there was any binding contract, it was this writing which could not be contradicted, varied or enlarged by evidence of an oral agreement. The writing was in the form of a letter from one Carson, the defendant's eastern agent in the city of New York, to the plaintiffs. The plaintiffs wrote a letter in reply accepting the terms stated by Carson.

The subsequent oral agreement made in Mexico, relied on by the plaintiffs, was to make a payment in money of a reasonable sum, probably from $2,000 to $3,000, toward the expenses of the plaintiffs in publishing a sportsman's guide to the Mexican Central Railway, which was the subject to which the previous writing related.

We assume, in accordance with the defendant's contentions, that the writing did not call for the payment of any money by the defendant to the plaintiffs, that it purported to cover the whole subject of the publication of this guide book, that it was in such a form as merged all previous negotiations between the parties, and that the testimony as to what occurred in these negotiations was not competent to show that the writing was incomplete and that the parties contemplated making some further arrangements in regard to the expenses involved in the project. Some of these matters are not plain, and the justices are not unanimous in their view of them.

The exceptions are to the refusal to give numerous instructions requested, to instructions given so far as they were inconsistent with those requested, and to rulings upon evidence. There was a series of requests as to the authority of McDonald and Murdock to make the oral agreement relied on. According to the testimony, McDonald made the agreement, although Murdock was present some of the time, and took part in the conversation. As the case was submitted to the jury it becomes necessary to

consider whether there was evidence that either or both of these persons had authority to make such a contract.

There was evidence from the answers of the defendant's vice president to interrogatories that McDonald was the defendant's general passenger agent, with offices in the City of Mexico, and was held out to the public as such by the use of his name on letterheads and otherwise; that his duties " were to exercise direct charge over the work of soliciting and securing passenger traffic for the road, and to make arrangements for that purpose." It also appeared that the proposed guide book was intended to "make known and popularize the hunting and fishing regions" along the line of the railroad, and that the defendant, before making this arrangement with the plaintiffs, had planned to publish a similar guide book entirely at its own expense. It appeared from the answers of the vice president that the defendant, at and about the time of making this arrangement, advertised in various newspapers and magazines, and that contracts for such advertising were made either by Murdock or McDonald. Murdock's duties as passenger traffic manager " were generally to supervise the work of the passenger department." The evidence tended to show that these two men represented the defendant generally at the head of this important department of a great railway corporation, and that their duties could not be properly performed without the frequent expenditure of substantial sums of money. Included in their charge was the advertising department, and the vice president answered that they contracted for the advertising, and had authority to give in return for it a certain amount of free or reduced rate transportation over the defendant's lines. But he said that neither of them had authority to make any contract for any purpose that involved the expenditure of money, without first having obtained special authority from an executive officer of the company. The jury might or might not believe this. If it was true, it was in the nature of a secret limitation of the general authority that these men were held out as possessing. Apparently, they were the general and highest representatives of the corporation that had any direct dealings with the public in reference to the business of the passenger department. They seem to have had all the authority that anybody dealing with the public had to

bind the corporation by contracts for the expenditure of money in their department. The business which they had in charge called for the expenditure of money. A secret instruction to them, as general agents in charge of such business, that they should obtain permission from an executive officer before expending any money, was not binding upon persons dealing with them in good faith, in reliance upon their ostensible authority. *Fay* v. *Noble*, 12 Cush. 1. *Merchants' National Bank* v. *Citizens' Gas Light Co.* 159 Mass. 505. *McNeil* v. *Boston Chamber of Commerce*, 154 Mass. 277, 286. *Cincinnati, Indianapolis, St. Louis & Chicago Railway* v. *Davis*, 126 Ind. 99. Upon the evidence in this case, the requests for rulings in regard to the authority of McDonald and Murdock were rightly refused.

The thirteenth request,* relative to the effect of proceedings at the former trial, was rightly refused. The presiding judge was not bound by any intimations or expressions of opinion of the judge at that trial.

The other requests were for the direction of a verdict for the defendant, and for a ruling " that there was no evidence that the defendant committed any breach of any contract with the plaintiffs, and the verdict must therefore be for the defendant." Upon the refusal of such requests, if the judge does not ask the requesting counsel to point out more particularly the propositions of law upon which he relies, it is possible to raise in this court any question of law actually involved in the request and refusal, even though it was never referred to or thought of by the judge or counsel at the trial.

The defendant now contends that the oral agreement was made in Mexico, a country which has not inherited the common law of England, that no evidence was introduced of what the law is in

---

* The ruling requested by the defendant here referred to was as follows: " 13. The evidence introduced at this trial for the purpose of showing authority on the part of J. C. McDonald or W. D. Murdock or either of them to make such a contract as is alleged by the plaintiffs to have been made is no stronger than or materially different from the evidence introduced or offered to be introduced at the former trial of this case and since the evidence so introduced or offered to be introduced was then held by the court to be insufficient to warrant a verdict for the plaintiffs the verdict must therefore be for the defendant."

Mexico, that there is no presumption in regard to the law of a foreign country unless it is one which is known to be governed by the common law, and that therefore the plaintiffs cannot prevail because the court cannot find a rule of law applicable to the case. If this view was in the mind of counsel at the trial, it does not seem to have been stated; but we are obliged to consider it.

The question is, by what presumption, if any, will the court be governed under such circumstances. In Story on Conflict of Laws, (8th ed.) § 637, in a long and elaborate note is this language of the learned editor: " Presumption has a proper place within limits in regard to foreign laws. Thus it could not be necessary to give evidence that in a foreign country breach of contract, battery, conversion, or damage caused by fraud or negligence would give a right of action." In *Whitford* v. *Panama Railroad*, 23 N. Y. 465, 468, Judge Denio says in the opinion: " Hence, if one bring a civil action for false imprisonment, or for an assault and battery committed abroad, he need not, in the first instance, offer any proof that such acts are unlawful, and entitle the injured party to a recompense in damages, in the place where they were inflicted; for the courts will not presume the existence of a state of the law in any country by which compensation is not provided for such injuries." Chief Justice Redfield, speaking for the court in *Langdon* v. *Young*, 33 Vt. 136, used these words: " But in the absence of all proof, courts assume certain general principles of law, as existing in all Christian States, as that contracts are of binding obligation, and that personal injuries are actionable." In the note of Dean Bigelow to which we have referred, he discusses many decisions of the courts, and criticises those that hold, in the absence of any evidence of the law of a foreign country, that there is a presumption that such country has the same law as the State or country of the forum; or, to put the proposition a little differently, that in the absence of any evidence of the law of a foreign country, the court will administer the law of the forum, thus putting the burden of proof upon the party who would avoid the application of the law of the forum to his case. He treats the whole subject as depending upon presumptions of fact which the court will apply according to common knowledge and experience.

Mr. Wigmore, in his work on Evidence, also says in § 2536 that presumption may, within certain limits, be resorted to. He adds, "If the foreign State is not one whose system is founded on the common law the presumption (that its law is the same as that of the forum) will probably not be made, unless the principle involved is one of the law merchant common to civilized countries." Here is an implication that universal rules or principles known to be common to all civilized countries, will be presumed to be recognized by the courts of all nations.

In the application of the law there has been a great diversity in the decisions. Some things seem to be generally settled. The law of a foreign State or country is to be established as a fact, either by direct proof or by a proper presumption. It is not to be presumed that the people in other States or countries have made the same statutory provisions that were made by the people of the State where the court sits. These statutes depend upon the views of the legislators, which may differ in different places. So of the common law, that has grown up through judicial decisions into an elaborate system, going very far beyond the fundamental principles that may be supposed to be recognized everywhere. All States and countries that have grown up under this system, or have inherited it, may be presumed to regard it in all its details. But other countries that live under a different system are not presumed to be governed by these provisions that exist only through precedents established by the courts. There is every reason why they should be presumed to recognize fundamental principles of right and wrong which lie at the foundation of human society, and to hold that a direct violation of these principles, to the injury of another person, creates a legal liability. If one should sue on a contract for goods sold and delivered in France, upon a promise to pay a certain price for them, it would seem unreasonable that a plaintiff should be obliged to bring evidence from that country that a breach of such a contract there creates a liability. So if one should sue for damages suffered from an assault and battery, or from a larceny committed there. There ought to be a presumption from common knowledge that a liability exists everywhere in such cases.

Some courts have gone further, and have held that, in the ab-

sence of any proof of the foreign law, the court will administer the law of its own jurisdiction.   This is the law in New York, and in the Supreme Court of the United States.   *Hynes* v. *McDermott*, 82 N. Y. 41.   *The Scotland*, 105 U. S. 24, 29, 30.

In this Commonwealth a plaintiff was permitted to recover under a contract governed by the law of Scotland, when no evidence was introduced to show what the law of that country was. *Chase* v. *Alliance Ins. Co.* 9 Allen, 311.   In *Rau* v. *Von Zedlitz*, 132 Mass. 164, 170, the court said: "It is conceded that, in the absence of any evidence of the law of Saxony, the question of duress or undue influence is to be determined by the law of this Commonwealth."   The case was decided upon this view of the law.   Upon the question whether a protest of a draft was necessary to charge a party under the law of Turkey, it was said in *Aslanian* v. *Dostumian*, 174 Mass. 328, that the court would not presume that the rules of the law merchant, or of the common law relative to such a matter as the protest of commercial paper, prevailed in Turkey, although this is not the principal ground of the decision.   In *Harvey* v. *Merrill*, 150 Mass. 1, 5, the court said: "The rights of the parties are to be determined by the law of Illinois, but there is no evidence that the common law of Illinois differs from that of Massachusetts."   This is given as the reason for deciding the case under the law of Massachusetts. *Mittenthal* v. *Mascagni*, 183 Mass. 19, 23, was an action upon a contract made in Italy, in which no evidence of the law of Italy was introduced.   The court said: "Assuming this, we must also assume that the law of Italy is like our own," and the plaintiff was permitted to recover.   *Bayer* v. *Lovelace*, 204 Mass. 327, was an action involving the rights of a party summoned as a trustee in an action of contract, in which he set up, as a ground for his discharge, the judgment of a court in Columbia, South America.   The court said: "We are not informed as to what the law of Columbia is, in reference to such conditions as appear in this case, but there is no reason to think that it is different from that of this country."   The case was decided against the trustee, according to the law of this country, but the burden was upon the trustee to prove the effect of the judgment, and to establish the law of Columbia if he relied upon it for his discharge.

In the present case the law upon which the plaintiffs rely is that creating a liability upon a simple contract to pay money for a valuable consideration. We are of opinion that, in an action upon a simple contract of this kind, there is a broad general presumption of fact that such a contract creates a liability in all civilized countries, which presumption is sufficient to entitle the plaintiff to recover, if no evidence is introduced of the law of the place where the contract is made. In so deciding we do not go so far as the cases which hold that, in the absence of evidence of the foreign law, the court will in all cases apply the law of the forum. We treat this, not as a presumption that the law of the foreign country is the same as the law of the forum, but as a presumption that all countries, in their courts of justice, will give effect to universally recognized fundamental principles of right and wrong in deciding between contending parties.

The defendant contends that there was no consideration for the promise to pay money to the plaintiffs, because they were already bound by the writing to do all that they undertook to do under the oral agreement. As a general proposition, it is settled in this Commonwealth that a promise to pay one for doing that which he was under a prior legal duty to do is not binding for want of a valid consideration. *Smith* v. *Bartholomew*, 1 Met. 276. *Commonwealth* v. *Johnson*, 3 Cush. 454. *Pool* v. *Boston*, 5 Cush. 219. *Warren* v. *Hodge*, 121 Mass. 106. It has often been said that the principle involved is the same that lies at the foundation of the doctrine that a promise to accept or pay a less sum in discharge of a debt for a greater amount is not binding. In connection with the general proposition see also *Cabot* v. *Haskins*, 3 Pick. 83, 92, 93; *Tobey* v. *Wareham Bank*, 13 Met. 440, 449; *Lester* v. *Palmer*, 4 Allen, 145; *Harlow* v. *Putnam*, 124 Mass. 553.

A limitation of the general proposition has been established in Massachusetts, in cases where a plaintiff, having entered into a contract with the defendant to do certain work, refuses to proceed with it, and the defendant, in order to secure to himself the actual performance of the work in place of a right to collect damages from the plaintiff, promises to pay him an additional sum. This limitation is not intended to affect the rule that a

contract cannot be binding without a consideration; but it rests upon the doctrine that, under these circumstances, there is a new consideration for the promise. *Monroe* v. *Perkins,* 9 Pick. 298. *Holmes* v. *Doane,* 9 Cush. 135. *Peck* v. *Requa,* 13 Gray, 407. *Rollins* v. *Marsh,* 128 Mass. 116. *Rogers* v. *Rogers,* 139 Mass. 440. Allen, J., in *Abbott* v. *Doane,* 163 Mass. 433, 434, 435. In *Rollins* v. *Marsh,* 128 Mass. 116, 120, the court said: "The parties had made a contract in writing with which the plaintiff had become dissatisfied, and which she had informed the defendant that she should not fulfil unless the terms were modified. If she had abandoned her contract, he might have made a new arrangement with some one else for the support of his ward, and enforced whatever remedy he had for the breach against the plaintiff. Instead of this, he made a new contract with her, which operated as a rescission of the original agreement." In such a case the new promise is given to secure the performance, in place of an action for damages for not performing, as was pointed out by this court in *Peck* v. *Requa,* 13 Gray, 407, 408.

This limitation in the application of the general rule to such facts is not recognized in England, nor in most of the States in this country. See *Abbott* v. *Doane,* 163 Mass. 433, 434, 435; Leake, Con. (4th Eng. ed.) 434–436; Pollock, Con. (7th Eng. ed.) 184–186; Harriman, Con. §§ 117–120. See also 8 Harvard Law Review, 27; 12 Ibid. 515, 521, 531; 13 Ibid. 519; 17 Ibid. 71. While it is well established in Massachusetts, the doctrine should not be extended beyond the cases to which it is applicable upon the recognized reasons that have been given for it. A majority of the court are of opinion that it is not applicable to the evidence in this case, and that the defendant is right in its contention that, upon the assumption that the parties were bound by the written contract, there was no consideration for the new promise of the defendant.

But the judge could not give either of these two rulings without assuming, and virtually ruling as matter of law, that the writing was a binding contract. For the defendant, it was signed by Carson, the defendant's eastern agent. The defendant's answer was a general denial of all the plaintiff's averments. The defendant's vice president's answers to interrogatories were in evidence, in which he said that, "Outside of contracts involv-

ing the transportation of freight or passengers, the general eastern agent had no authority whatever to enter into any contract of any kind or character in behalf of the company, without securing authority from his superior officers either in the passenger or the freight department." This evidence was uncontradicted. While there was testimony indicating that Carson communicated by letter with some superior officer in Mexico before completing the negotiations with the plaintiffs, there was nothing more than the possibility of an inference in regard to what authority he obtained. While the principal dis-· pute between the parties was in regard to the oral agreement made in Mexico, the authority of Carson to bind the defendant by the writing was a fact to be proved in the case before either party could avail himself of the writing as a contract, and the judge, in his charge, submitted to the jury the question of Carson's authority, as he did also questions as to the authority of McDonald and Murdock. A majority of the court are of opinion that in dealing with the requests of the defendant, the judge could not assume or rule as matter of law that Carson had authority to bind the defendant by the writing, and he therefore could not rule that there was a valid contract in writing by which the parties were bound when the agreement was made in Mexico, and that the oral agreement was without consideration because the plaintiffs were to do no more under it than they had previously contracted to do. If the jury failed to find that the writing was authorized by the defendant, they might find that an oral agreement was made in Mexico, which adopted and included the provisions that previously had been reduced to writing, and that then for the first time became binding, because made a part of the general agreement between the plaintiffs and the defendant's representatives. Under such a possible finding, this question which the defendant now argues could not arise, and the defendant would be liable.

The defendant contends that the plaintiffs cannot recover because they did not completely perform their contract. The declaration is for damages for a breach of the contract. There was evidence that the defendant agreed to provide for the expenses incurred by the plaintiffs in the prosecution of the work; that McDonald told the plaintiffs to send the bills for

their personal expenses to him; that they incurred large expenses, and that the defendant, though requested, refused to pay the plaintiffs any money and denied its liability to pay anything or to make any provision for the payment of the expenses. This justified the plaintiffs in refusing to go on with their contract, and in suing the defendant for damages for its breach of the contract.

The question to Carson, " Did you, yourself, have authority to spend any money for advertising purposes ? " put by the defendant, "expecting the witness to answer that he had no such authority," was rightly excluded.   It called for a conclusion of the witness as to the legal effect of his relations with the defendant, and not merely for facts which would show whether he had authority.   So far as appears, he was permitted to testify fully as to the facts.

We are also of opinion that the language of the judge in regard to the interrogatories and the rulings upon them, when rightly interpreted, was not erroneous.   The first part of his statement was, in substance, that the answers were evidence of the facts tending to show the authority or want of authority of the agents; but not evidence so far as they stated the opinion or the conclusion of the vice president from these facts as to the extent of their powers or duties.   While the meaning of the judge was not very clearly expressed, we are of opinion that the jury were not misled in regard to it.

The defendant did not suffer from the exclusion of the last two sentences of the answer to the fourteenth interrogatory. There was nothing material in these sentences that was not fully stated in the earlier part of the answer.

*Exceptions overruled.*