## MARY A. O'BRIEN *vs.* JOHN H. SHEA.

Suffolk. November 11, 1910. — May 16, 1911.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Contract*, Implied in fact, Implied by law, Validity. *Landlord and Tenant. Lord's Day. Practice, Civil*, Conduct of trial, Exceptions, Duty as to ruling in absence of request.

At the trial of an action to recover rent for the occupation by the defendant of a cottage belonging to the plaintiff, if it appears that an oral agreement to hire the cottage was made on a Sunday, which it is assumed would be void under R. L. c. 98, § 2, St. 1904, c. 460, § 2, and that afterwards the defendant occupied the cottage with the consent of the plaintiff as if holding under him, the presiding judge properly may refuse to rule that the plaintiff cannot recover; because upon the evidence presented it may be inferred from the conduct of the parties on subsequent week days that they made a valid agreement adopting the terms of the agreement of Sunday, which would make the defendant liable for the rent stipulated for on Sunday, or it may be that, in the absence of an express lawful agreement as to the amount of rent to be paid, the plaintiff would be entitled to recover the fair value of the defendant's use and occupation of the plaintiff's cottage.

In an action to recover rent for the occupation by the defendant of a cottage belonging to the plaintiff, which is subject to a mortgage, if there is evidence warranting a finding that the defendant made a lawful agreement to hire the cottage from the plaintiff, it is not necessarily a defense to the action to show that the plaintiff intended to treat the defendant as occupying under the mortgagee and to hold the mortgagee accountable for the rent, and that the action against the defendant was begun only after an unsuccessful attempt to hold the mortgagee liable, because the relations between the plaintiff and the mortgagee, although important, are only material in determining whether the defendant hired the cottage from the plaintiff.

At the trial of an action of contract to recover rent for the occupation of a cottage belonging to the plaintiff, which is subject to a mortgage, the presiding judge properly may refuse to give an instruction singling out certain evidence favorable to the defendant as tending to show that the plaintiff intended to hold the mortgagee for the rent, where this is only one of the circumstances to be weighed by the jury in determining whether the defendant hired the cottage from the plaintiff.

A presiding judge properly may refuse to rule upon certain uncontroverted facts picked out from the evidence when the disputed facts also are material.

Where an action at law is before this court upon a bill of exceptions, only the questions raised by the exceptions can be considered. In the present case the question sought to be raised before this court was not brought to the attention of the presiding judge at the trial, was not raised or referred to by counsel at the trial and was not open on the pleadings.

It is at least doubtful whether this court have power under R. L. c. 156, § 3, where an action at law is before them upon a bill of exceptions, to order a new trial on

account of an error of law made by the judge who presided at the trial which is not brought in question by any of the exceptions. By SHELDON, J.

At the trial of an action of contract, if the evidence discloses the fact that the agreement relied upon by the plaintiff was made on a Sunday, contrary to the prohibition contained in R. L. c. 98, § 2, St. 1904, c. 460, § 2, but this defense does not appear from the allegations of the declaration and is not set up in the answer and the defendant in no way raises the question at the trial, although *it seems* that the presiding judge, if he sees fit to do so, may of his own motion rule upon the question in favor of the defendant, and that such ruling would be sustained, yet it is not the absolute duty of the judge to interfere by proposing and sustaining this defense which has not been set up by the defendant, and his failure to do so gives the defendant no ground for exception.

CONTRACT to recover $100 for the rent of a cottage and $50 for the rent of a stable upon property in the town of Sharon standing in the name of the plaintiff, subject to a mortgage, and occupied by the defendant during the summer season of 1904. Writ in the Municipal Court of the City of Boston dated October 17, 1908.

The declaration contained three counts, the first alleging that the defendant owed the plaintiff $150 for the use and occupation of a certain cottage and stable hired from the plaintiff by the defendant, the second on an account annexed for the same amount, and alleged to be for the same cause of action, the third alleging that the plaintiff made a demand upon the defendant for the payment to her of the money due as set forth in the first and second counts on or about January 1, 1905, and that the defendant owed her interest on $150 from that date.

The answer contained a general denial and an allegation of payment.

On appeal to the Superior Court the case was tried before *Fox*, J. At the trial the plaintiff waived any claim for the rent of the stable. The defendant admitted the occupation of the cottage, but asserted that he occupied it by virtue of an arrangement with one McNeil, who was at that time the mortgagee of the premises in question, and that he had no agreement of any kind with the plaintiff in regard to such occupation.

The plaintiff testified that McNeil had a mortgage upon the premises on which the cottage with several other similar cottages was situated during the year 1904 and 1905. In regard to the alleged hiring of the cottage by the defendant she testified substantially as follows: "I didn't speak with Mr. Shea; I spoke

with his wife. He was sitting there and heard the conversation. Mrs. Shea told me that she was looking for a cottage and that she had come down to Sharon on account of her health. She asked me how many cottages we had to rent. I told her we had two to rent. She asked me if we would let the corner cottage. I said, 'I can't let the corner cottage. I allow my daughter to occupy that in the summer time.' They then went across the street with my husband and daughter. She asked me what I got for the cottage. I told her I got $100 a season. They went across the street with my husband and daughter and in two of the cottages they looked in the windows and went around to the corner cottage and got in through the window. Mr. McNeil and Mr. Shea had got in through the window and Mrs. Shea stayed with my daughter on the piazza. Mrs. Shea came back and said, ' We have decided to take the corner cottage.' I said, 'You can't; I have given it to my daughter.' She put her hand on my daughter's shoulder and says: ' Well, yours for mine or none at all.' Mr. Shea was not there at the time. He was coming across the street. There was nothing further said. That was the last conversation that she had at that time. When I last talked with Mrs. Shea, Mr. McNeil and Mr. Shea were just coming across the street. I guess the street is about forty feet wide. It is a wide street; a public street, and the main street. On the Wednesday following they came out. Before they left on Sunday I said to Mrs. Shea, 'Mary says you may have the cottage.' Mr. Shea was present at the cottage; I don't know whether she heard it." The plaintiff also testified that her husband was not her agent for her Sharon property, including the cottage in question.

The plaintiff's testimony in regard to the alleged hiring was corroborated by that of her daughter. The plaintiff's husband also was a witness. Among other things he testified that he was not his wife's agent for her Sharon property, including the property in question, and that he did not agree with McNeil that the defendant might occupy the cottage free of rent.

The defendant testified in his own behalf, and McNeil also testified as a witness for the defendant.

The bill of exceptions contained the following statement: "The testimony was uncontradicted that whatever arrangement,

if any, was made for the hiring, use, occupation or tenancy of said cottage by the defendant was made on Sunday afternoon. But the attention of the court was not called to this at any time during the trial."

At the close of the evidence the defendant asked the judge to give the jury, among others, the following instructions :

"1. Upon all the evidence the plaintiff is not entitled to recover.

"2. If the jury find that the plaintiff's husband as her agent had general charge of the property in question, and permitted the defendant to occupy it without rent, the defendant is not liable.

"3. If the jury find that the plaintiff's husband as her agent had general charge of the property in question and permitted McNeil to arrange for the occupancy of the same by the defendant, holding and intending to hold said McNeil for any sum that might be due for the occupancy of the premises in question, the plaintiff is not entitled to recover.

"4. If the plaintiff or her husband as her agent intended to hold McNeil accountable as mortgagee in possession or otherwise for the rent of the property in question during its occupancy by the defendant, the plaintiff is not entitled to recover."

"7. If the jury find that no bill was ever rendered the defendant and the plaintiff's husband as her agent attempted to recover the amount in question in a suit against McNeil begun in August, 1905, and that the present action was not begun until over three years after the defendant left the premises, they may consider these circumstances upon the question of whether the plaintiff intended to hold McNeil or the defendant for the rent in question.

"8. If the jury find that the plaintiff intended to hold McNeil for the rent in question she cannot recover in this action."

The judge gave the second of the instructions requested as above, and refused to give any of the others.

The judge submitted to the jury the following question: "Did the defendant occupy the plaintiff's cottage under an express agreement with her for the payment of rent?" To this question the jury answered "Yes."

The jury returned a verdict for the plaintiff in the sum of

$100 with interest from the date of the writ. The defendant alleged exceptions. The bill of exceptions contained the following statement: "The question of the illegality of the hiring in question was not raised at the trial except as it is involved in the defendant's first request."

The provision of R. L. c. 156, § 3, referred to in the opinion is as follows: "The Supreme Judicial Court shall have general superintendence of all courts of inferior jurisdiction to correct and prevent errors and abuses therein if no other remedy is expressly provided; . . ."

*I. R. Clark & G. F. Ordway*, for the defendant, submitted a brief.

*J. A. McGeough*, for the plaintiff.

SHELDON, J. There was no error in the judge's refusal to rule absolutely that the plaintiff was not entitled to recover. The defendant's argument as to this rests entirely upon his contention that according to the uncontradicted evidence the contract of hire between the parties was made on Sunday and so could not support an action. R. L. c. 98, § 2. St. 1904, c. 460, § 2. *Day* v. *McAllister*, 15 Gray, 433. *Stewart* v. *Thayer*, 168 Mass. 519. *Horn* v. *Dorchester Mutual Fire Ins. Co.* 199 Mass. 534. But, even if this position were open to him, the instruction requested could not have been given; for although the defendant might have entered upon his occupation of the plaintiff's premises under a void agreement, yet by reason of his subsequent occupation under the right of the plaintiff he could have been held liable to her, not on the ground that the void agreement had been ratified so as to be in effect from the beginning, but because it could be found from the conduct of the parties that they had subsequently without formality adopted its provisions. *Miles* v. *Janvrin*, 200 Mass. 514. *Shepley* v. *Henry Siegel Co.* 203 Mass. 43. We need not consider whether in that case the plaintiff could recover the sum stipulated for on Sunday, or whether her recovery could be only for the fair value of the defendant's occupation; *Cranson* v. *Goss*, 107 Mass. 439, 441, 442; for this point was not taken at the trial, no question of pleading was raised, and the only exceptions were to the refusal to give the defendant's first, third, fourth, seventh and eighth requests.

The other requests were rightly refused. If there was such an agreement between the parties as the plaintiff contended, the relations between the plaintiff and the mortgagee became immaterial. Those relations were no doubt important for the jury to consider in determining what if any agreement or understanding had been reached between the plaintiff and the defendant; but her intention as to what claim she would make on the mortgagee was not necessarily decisive of the issue in this case. The refusal to give the third, fourth and eighth requests was right.

Nor was it wrong to refuse to give the seventh request. The defendant could not require the judge to single out the circumstances favorable to the defense and instruct the jury to consider these. It might have seemed to the jury to make the intention of the plaintiff as to the mortgagee the controlling feature of the case, whereas it was really only one of the circumstances to be weighed. *Green* v. *Boston & Lowell Railroad*, 128 Mass. 221, 227. *Delaney* v. *Hall*, 130 Mass. 524. *Bugbee* v. *Kendricken*, 132 Mass. 349. *Murphy* v. *Boston & Albany Railroad*, 133 Mass. 121, 126. *Hopcraft* v. *Kittredge*, 162 Mass. 1, 11. *Lakeside Manuf. Co.* v. *Worcester*, 186 Mass. 552, 558, 559. As in the case last cited, this instruction might have confused and misled the jury. Nor was the judge required to pick out uncontroverted facts and rule upon them, for the disputed facts were material. *Pierce* v. *O'Brien*, 189 Mass. 58, 61.

The defendant complains that the verdict for the plaintiff rested only upon the finding that he occupied her cottage under an express agreement with her for the payment of rent, and that on the evidence this agreement was made on Sunday, and so that the verdict cannot be sustained. But this point was not brought to the attention of the judge at the trial or taken in any way in the Superior Court. The whole case is not before us. We can deal only with the exceptions that were saved and allowed, and can consider only the questions raised by these. R. L. c. 173, § 117. *Littlefield* v. *Gilman*, 207 Mass. 539. *Bond* v. *Bond*, 7 Allen, 1, 6, referred to in *Webb* v. *Hanley*, 206 Mass. 299, 305. *McRae* v. *Locke*, 114 Mass. 96, 97. *Rich* v. *Lancaster Railroad*, 114 Mass. 514. *Jarvis* v. *Mitchell*, 99 Mass. 530, 532. *Commonwealth* v. *Althause*, 207 Mass. 32, 45.

Such cases as *Parrott* v. *Mexican Central Railway*, 207 Mass. 184, 190, and *Vermilye* v. *Western Union Telegraph Co.* 207 Mass. 401, do not help the defendant; for this point was not only not referred to by counsel or raised at the trial, but it was not open on the pleadings. A different rule may be applied in equity where the whole case comes before this court on appeal, especially when the illegality amounts to a very high crime, as in *Dunham* v. *Presby*, 120 Mass. 285. No contention can be. made in this court upon a point which was not taken in the Superior Court. *Colvin* v. *Peabody*, 155 Mass. 104. *Barker* v. *Lawrence Manuf. Co.* 176 Mass. 203. *Henderson* v. *Raymond Syndicate*, 183 Mass. 443, 446. *Howard* v. *Fall River Iron Works*, 203 Mass. 273, 277. We cannot set aside the verdict on this ground.

But it is said that the plaintiff was allowed to go to the jury upon her allegation that an express contract had been made between her and the defendant, although it then appeared that the contract was made on Sunday, and so was illegal and void. The contention is that no court will consciously lend its aid to the enforcement of an illegal contract. *Claflin* v. *United States Credit System Co.* 165 Mass. 501, 503, and cases cited. It is said that for this reason, although that defense was not pleaded and the point was in no way called to his attention, the judge at the trial ought of his own motion to have interfered and to have ruled that the action could not be maintained upon the express contract, and that this court ought now, although having before it only specific exceptions which, as we have seen, do not raise this point, to order a new trial in order that the error of the judge of the Superior Court may be corrected. It is at least doubtful whether this court has the power to take such action under the provisions of R. L. c. 156, § 3. *Commonwealth* v. *Scott*, 123 Mass. 418, 420. But we need not determine that question; for in our opinion the judge at the trial was not bound to make the ruling contended for.

The illegality in this case was the violation of the statute already referred to which forbids the doing of any work or business on Sunday. This is a valid police regulation (*Commonwealth* v. *Has*, 122 Mass. 40), and if the defense is properly pleaded, is a complete bar to the enforcement of any ordinary

contract made on that day. And it may be assumed that the judge at the trial might of his own motion have ruled upon the question in favor of the defendant, if he had seen fit to do so, and that an exception of the plaintiff then would have been overruled. But the defendant, not having raised the question, could not require this to be done. As was said by Gray, C. J., in *Cardoze* v. *Swift*, 113 Mass. 250, 252, the defendant had no right to offer evidence of such illegality, " or even to avail himself of it when disclosed in the plaintiff's testimony, if the court . . . [did] . . . not refuse to entertain the case." *Granger* v. *Ilsley*, 2 Gray, 521. *Bradford* v. *Tinkham*, 6 Gray, 494. *Goss* v. *Austin*, 11 Allen, 525. *Geer* v. *Putnam*, 10 Mass. 312, explained in *Robeson* v. *French*, 12 Met. 24. *Pratt* v. *Langdon*, 97 Mass. 97.· *Cassidy* v. *Farrell*, 109 Mass. 397. *Suit* v. *Woodhall*, 116 Mass. 547. *Goddard* v. *Rawson*, 130 Mass. 97. *Doherty* v. *Ayer*, 197 Mass. 241, 248. Many other cases might be cited to the same effect if there were occasion to do so. See for example those collected in 37 Cyc. 571, 572. But the very fact that the defendant in a case like this has no right to prove the illegality and have it considered unless he has pleaded it goes far to show that there is no imperative obligation upon the judge to interfere and refuse to entertain the action by reason of the illegality. Were it otherwise, a defendant always would be allowed to raise the question, regardless of the state of the pleadings; every plaintiff would understand that it was for him to prove the legality of his contract, as indeed has been held in a few scattering cases, and would be prepared to do so. Certainly the judge would not wilfully shut his eyes, and refuse to allow them to be opened, so as to plead ignorance of the illegality which he was sanctioning.

It is believed that in actions at law like the one at bar, in which the defense of illegality has not been set up, the court will recognize no absolute duty to interfere and of its own mere motion to sustain a defense not set up by the party, and generally will not so interfere, unless, first, the plaintiff's declaration shows that he relies upon an illegal agreement or violation of law, or, secondly, unless he has been obliged to show his own guilt in fully proving his case. Under the first of these heads come such cases as *Claflin* v. *United States Credit System Co.* 165 Mass. 501; *Hazelton* v. *Sheckells*, 202 U. S. 71; and *Isler* v. *Brunson*,

6 Humph. 277. In the second class are included such cases as *Oscanyan* v. *Arms Co.* 103 U. S. 261; *Thomas* v. *Richmond*, 12 Wall. 349; *Fowler* v. *Scully*, 72 Penn. St. 456; and *Alford* v. *Burke*, 21 Ga. 46.

In many of the cases which have been relied on in behalf of the defendant, the point was raised in the pleadings, either by averments in the answer, by agreed statements of facts, or otherwise. See for example *Libby* v. *Downey*, 5 Allen, 299; *Smith* v. *Arnold*, 106 Mass. 269; *Palmer* v. *Kelleher*, 111 Mass. 220; *Eaton* v. *Kegan*, 114 Mass. 433; *Prescott* v. *Battersby*, 119 Mass. 285; *Snell* v. *Dwight*, 120 Mass. 9; *Baldwin* v. *Connecticut Mutual Ins. Co.* 182 Mass. 389; *Kennedy* v. *Welch*, 196 Mass. 592. In *Horn* v. *Dorchester Mutual Fire Ins. Co.* 199 Mass. 534, the plaintiff, was allowed to rely on the illegality of the surrender set up by the defendant. As the parties were at issue on the answer, the case stood as if the plaintiff had set up the defense by replication. R. L. c. 173, § 31.

There are some decisions and some statements in the books at variance with our conclusion. *Heffron* v. *Daly*, 133 Mich. 613. *Richardson* v. *Buhl*, 77 Mich. 632. *Pietsch* v. *Pietsch*, 245 Ill. 454. *Escambia Land & Manuf. Co.* v. *Ferry Pass Inspectors & Shippers Association*, 59 Fla. 239. See also the cases collected in 15 Am. & Eng. Encyc. of Law, (2d ed.) 1015, not all of which however uphold the statement of the text. But we feel that the result which we have reached is supported both by principle and by authority.

<em>Exceptions overruled.</em>