**Stuart M. HUNT, Plaintiff, Appellant,**

v.

**Cecil RHODES, Jr., Defendant, Appellee.**

**No. 6764.**

United States Court of Appeals
First Circuit.

Heard Oct. 5, 1966.

Decided Dec. 8, 1966.

Sydney Berkman, Boston, Mass., for appellant.

Cecil Rhodes, Jr., pro se.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

## OPINION OF THE COURT.

McENTEE, Circuit Judge.

This is a diversity suit to recover the amount of certain loans alleged to have been made by plaintiff to defendant.[1] The jury awarded plaintiff $50,000. Thereafter, the trial court granted defendant's motions to set aside the verdict and enter judgment for the defendant or in the alternative grant the defendant a new trial.[2] Subsequently, the court entered judgment for the defendant upon the grounds stated in granting the aforesaid motions. It is from this judgment that plaintiff appeals.

One of plaintiff's assignments of error is the trial court's ruling that plaintiff's recovery "is in any event, barred by the release which he signed and gave to the defendant."[3] At the trial, defendant produced a general release dated October 30, 1961, which plaintiff admittedly signed and delivered to him at the office of defendant's attorney in Boston. He claims that this release is a bar to plaintiff's recovery. Plaintiff counters that the release is invalid because it was executed and delivered on October 29, which was a Sunday,[4] and not October 30—the date recited in the release. Although plaintiff urges additional grounds for reversal, we regard the question of whether plaintiff validly released defendant as the crucial issue in this case.[5]

■ It is well settled that in this posture of the case, we must view the facts in the light most favorable to plaintiff, giving him the benefit of all favorable inferences that may be reasonably drawn from the evidence. Cross v. M. C. Carlisle & Co., Inc., November 21, 1966 (1st Cir.), 368 F.2d 947. Viewed in that light, the pertinent facts may be stated briefly as follows.

Over the years between 1955 and 1961 defendant made a number of loans to plaintiff.[6] Plaintiff claims, however that by May of 1961 all his financial obligations to defendant had been paid in full and that as of that time he owed defendant nothing.[7]

In August 1961 plaintiff again approached defendant for a substantial

---

1. The total amount claimed is $77,370 plus interest.

2. The motion for a new trial was granted conditionally on the ground that the jury did not give this case proper consideration.

3. This was one of the grounds stated by the trial judge in his memorandum decision granting defendant's motion for judgment notwithstanding the verdict.

4. Mass.G.L.(Ter.Ed. c. 136 § 5). "Whoever on the Lord's day keeps open his shop, warehouse or workhouse, or does any manner of labor, business or work, except works of necessity and charity, shall be punished by a fine of not more than fifty dollars."

5. The monetary transactions in this case are so complex as to be at times almost incomprehensible. During oral argument we twice asked plaintiff's counsel if his case fell if the release were held to be valid and he acknowledged that it would.

6. In the beginning these loans were for relatively small amounts ranging from $3,000 to $6,000 but in later years some of them were for substantial amounts. In June 1959 defendant loaned plaintiff $24,350; in April 1960 $70,080 and there was another loan for $11,000 in March 1961.

7. Defendant denies this and says that as late as September 1961 plaintiff owed him a substantial balance which the parties agreed to settle in late August 1961 for $45,000 but defendant was not paid until September 15, 1961.

loan.[8] He testified that instead of getting the loan, as things worked out he ended up loaning defendant $70,370; that in order to do this he was obliged to borrow this amount from several sources on a short term basis and that he then loaned it to defendant in September 1961, on defendant's representation that he needed it for only a short period.[9]

We now come to the events immediately preceding and surrounding the execution and delivery of the release. On Friday evening, October 27, plaintiff came to Boston and had an urgent meeting with the defendant; his purpose being to obtain a substantial amount of money as soon as possible.[10]

Immediately after this meeting defendant contacted some people named Harris to whom he owed money and arranged to pay them $50,000 on account with the understanding that the Harrises would then loan the necessary funds to plaintiff.[11] Later that evening defendant informed plaintiff of the arrangement he had made with the Harrises and told him there would be some papers for him to sign when defendant's lawyer, one Glazer, who was then out of town, returned to Boston. On Sunday, October 29, the parties met Glazer; the three of them went to Glazer's office and while there plaintiff signed and delivered the release to the defendant.[12]

At the time of the execution and delivery of the release it was agreed that on the next day defendant would wire $50,000 from Boston to the Harrises in New Jersey. Plaintiff returned to New Jersey on Sunday evening with the assurance that the Harrises would loan him $50,000 the next day.[13]

■■ In determining whether plaintiff validly released defendant, the law of Massachusetts must be applied.[14] There is no doubt that the making of

8. Defendant says this time plaintiff wanted $100,000. The record is silent on the reason for all these borrowings.

9. The testimony of the parties with reference to this transaction is entirely irreconcilable. Plaintiff says that when he asked for this loan in August 1961 defendant told him he had no ready cash but if he could raise enough money to release certain stock he had pledged as collateral for a $70,000 bank loan, he would repledge this stock as collateral for a much larger loan and thus accommodate the plaintiff. As things worked out he could not raise enough money to release the stock and asked plaintiff to help him do so. Plaintiff borrowed $45,000 from one Haggerty, a New Jersey business man, on a promise to repay him in a week and endorsed and delivered the check to the defendant. This still not being enough, plaintiff says he borrowed $25,370 more from other sources and turned over a total amount of $70,370 to defendant between September 15 and 29, 1961.

Defendant says that by August 1961 he had decided not to loan any more money to plaintiff and settled his claims against him for a total of $45,000; that plaintiff gave him a check for this amount but, as had happened several times before, plaintiff did not have sufficient funds to cover this check and asked defendant to hold it; that on or about September 15, 1961, plaintiff still not having sufficient funds to cover his $45,000 check, borrowed the $45,000 from Haggerty to pay defendant and endorsed and delivered Haggerty's check to defendant, not as a loan, but in payment of what plaintiff owed him. See footnote 7. He also denied borrowing the balance of the $70,370 from plaintiff as claimed.

10. Haggerty had brought suit against the plaintiff in New Jersey on the unpaid loan of $45,000 and earlier that day plaintiff was sent to jail in New Jersey for nonpayment of this debt. He immediately contacted defendant and made the necessary arrangements to meet him in Boston that night with the view to obtaining sufficient funds to pay Haggerty and thus get himself released from jail.

11. The record indicates that although defendant had decided not to lend plaintiff any more money, that at or about the time plaintiff settled his account with him for $45,000, defendant told plaintiff he would help him get a loan elsewhere but up to this time had done nothing about it.

12. Defendant claims that all this happened on Monday, October 30, 1961.

13. Concededly, plaintiff received the money from Harris on Tuesday, October 31.

14. Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

contracts and releases comes within the proscription of the Massachusetts Sunday law.[15]  O'Brien v. Shea, 208 Mass. 528, 95 N.E. 99, 101 (1911); Horn v. Dorchester Mut. Fire Ins. Co., 199 Mass. 534, 85 N.E. 853 (1908).

While it appears that defendant arranged this $50,000 loan for the plaintiff on a secular day, we must assume, at least for present purposes, that the release itself was executed and delivered on a Sunday.  As we held in Sears v. Pauly, 261 F.2d 304 (1st Cir. 1958), an agreement made in Massachusetts on Sunday is illegal.  It cannot be ratified so as to be in effect from the beginning.  It can, however, be adopted by the parties impliedly and without formality through their subsequent conduct on a secular day.  No express agreement is necessary.  Following the rule laid down in the leading case of Miles v. Janvrin, 200 Mass. 514, 86 N.E. 785 (1909), we stated in Sears v. Pauly that a Sunday contract is competent for the purpose of explaining the later implied agreement that may not be fully intelligible in itself and is also competent for the purpose of showing its meaning.

In commenting on the situation in Miles v. Janvrin, supra, we said at p. 309 of 261 F.2d:

> "Thus although there was no express agreement by the parties that all the terms of the Sunday contract would be adopted in the enforceable contract, which in itself was implied from their conduct on secular days, it was held that such terms could be inferred to be included in the subsequent agreement."

This language applies with equal force to the situation in the instant case.  Here the release did not become effective until October 31, 1961, a secular day.  Defendant's attorney testified that both plaintiff and defendant attached a condition to this release, namely, that defendant was to go to the bank in Boston the following morning, withdraw $50,000 and wire it to either the plaintiff or Harris— he didn't remember which.  The testimony shows that this was done; that plaintiff received the money on Tuesday, October 31, and paid his debt that day.  Thus we think that although the Sunday release was invalid, a later implied agreement releasing the defendant, arose between the parties by reason of their subsequent acts, which agreement is valid and enforceable.[16]

Affirmed.

---

15.  See footnote 4.

16.  Even if the agreement were unilateral in that plaintiff's release was an offer made on Sunday which defendant accepted by wiring the money on a secular day, the release is nonetheless valid.  Maher v. Haycock, 301 Mass. 594, 18 N.E.2d 348 (1938).